WILLIAM C. WURM, Plaintiff-Appellant, *v.* JUDITH O. HOWARD, Defendant-Appellee.

Third District   No. 79-515

Opinion filed March 19, 1980.

Ronald E. Boyer, of Fleming & Boyer, of Watseka, for appellant.

Judith O. Howard, of Champaign, for appellee, *pro se.*

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Petitioner William C. Wurm appeals from the judgment and order of the Circuit Court of Iroquois County awarding custody of his three children to his former wife, now Judith O. Howard. The case has previously been before this court after a prior custody determination in favor of respondent. (*Wurm v. Wurm* (1979), 68 Ill. App. 3d 168, 385 N.E.2d 894.) We reversed that judgment and remanded to the circuit court so that it could reconsider its judgment in light of the standards set forth in section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 602). Upon remandment, additional evidence was heard and the court again awarded custody to respondent Judith Howard, making specific findings on the matters set forth in the Act. Petitioner on this appeal argues (1) that the court's findings were erroneous and contrary to the manifest weight of the evidence and (2) that the court failed to consider all relevant factors in making its decision as to the best interests of the children.

The record reveals that during their marriage three sons were born to William and Judith Wurm. The ages of the boys at the time of the latest custody decision were 12, 10 and 5 years. Respondent Judith Howard left her former husband in December 1976, taking the three children with her. The Reverend William Wurm filed for a divorce, on grounds of mental cruelty, and a divorce decree was entered in April 1977. Also, in April 1977, respondent married her current husband, Wetzel Howard, and the couple, with the three boys, established residence in Champaign, Illinois. They have lived there since that time. In the divorce proceeding both parents sought custody of the three children. A hearing on temporary custody was held in January 1977, at which both petitioner and respondent testified and other witnesses were presented as well. The court also conducted *in camera* interviews with the children. After surveying the evidence, the court entered its order giving temporary custody of the children to Judith Howard, then Judith Wurm, respondent. The court stated, in a memorandum of opinion accompanying the custody award, that its judgment was based on findings that the children's best interests were served by keeping them together and by their

remaining in the Champaign residence and continuing to attend Champaign schools. The court found that a dislocation of them from their then present residence and home would not serve their best interests. The court also found that both parents were fit and proper persons to have custody of the children. The court also stated that its findings on temporary custody were without prejudice to either party in seeking permanent custody and that no inference in favor of the respondent was to be drawn from her physical control of the children prior to a hearing.

The divorce was granted in April 1977, with matters of permanent custody continued to another hearing. In June 1977, the court heard further testimony on the question of the permanent custody of the children. The evidence, which need not be detailed here, indicated that both parents were fit and proper persons to have custody of the children and that both wanted custody of them. In addition to the evidence adduced in open court, the trial judge conducted another *in camera* interview with the two older children, then aged 10 and 8 years. Both boys stated that they liked their new home in Champaign and their activities there, but both again stated a preference for living with their father in Cissna Park. A similar preference had been voiced by them in the first interview on the question of temporary custody. At that time, the court felt their preference was possibly the result of the then recent dislocation from their prior home in Cissna Park. In the second interview, conducted in June 1977, the boys said they preferred living with their father in Cissna Park because their friends were there and there were more things to do there. The court, in taking the matter under advisement, stated the difficulty of its decision, in part because both parents were fit and proper persons to have custody. Prior to making his decision, the trial judge held another *in camera* interview with the boys in which, according to the court's statements of record, the boys advised the trial judge that they had no preference between their parents, being equally attached to both. The court awarded permanent custody of all three children to Judith Howard, their mother. In his statements from the bench, the trial judge indicated that his decision was based upon findings that the best interests of the children were served by their staying together and that the youngest, then 4, needed his mother's attention. On those bases, the court awarded permanent custody to Judith Howard with liberal visitation privileges to William Wurm.

On an appeal by petitioner, this court reversed that judgment and remanded, directing the trial court to reconsider its decision in light of the standards set forth in section 602 of the new Act. (*Wurm v. Wurm* (1979), 68 Ill. App. 3d 168, 385 N.E.2d 894; Ill. Rev. Stat. 1977, ch. 40, par. 602.) Upon remandment, the circuit court heard further evidence from the parties and the children again testified, although the trial judge found it

against their interests to be required to answer specific questions as to whom they preferred to live with. Additional pertinent evidence introduced at the hearing indicated that Rev. Wurm had remarried since the last hearing and that he had also relocated. He and his new wife, with whom the children had spent time, lived in Glenbush, Wisconsin, where Rev. Wurm was pastor of a Lutheran church. The testimony indicated that the boys and Mrs. Wurm got along very well and that the new home provided a good environment for the boys' upbringing. Judith Howard also testified, discussing the boys' progress in school, their outside activities and interests, and their health. She testified that she was employed as an agent for the Aid Association for Lutherans and that while Wetzel Howard was unemployed at that time, he did receive an Air Force pension of $500 monthly. She testified that the family was getting along fine together. The children attended church regularly in Champaign. The older boys also testified, stating that they liked their church and school in Champaign and that they get along well with their stepfather. They testified, too, that they enjoy visiting their father and stepmother in Wisconsin and enjoy that home. The court refused to permit questions to the boys which would require them to state a preference between their parents. The court prefaced this restriction upon questions by noting that children in the custody of one parent often express a desire to be in the custody of the other parent and that such was a matter to be considered by the court. The court took the matter under advisement and later entered its judgment order, from which the present appeal is made. Respondent Judith Howard was given permanent custody of the three children.

In its judgment order, the court made specific findings. (1) It found that both petitioner and respondent were particularly well suited to have the custody of the children and that each expressed a wish and desire to exercise custody. (Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(1).) (2) It found that the wishes of the children, as expressed in the previous *in camera* interviews and, indirectly, in trial testimony, were "ambivalent and uncertain," and based upon their love for each parent. The court also specifically found that the children's best interests were not served by requiring them to state a preference between their parents. (Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(2).) (3) It found that the interaction and interrelationships with each parent and each new spouse of the parents were satisfactory and equal and that the children's interaction amongst themselves was wholesome and supportive. It again found that it was in their best interests not to be separated from each other. (Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(3).) (4) The court also found that each child was well adjusted to his present custodial home, school and community. It found that while the children were capable of adapting to a change of

custody, their best interests would not be served by altering the existing custody arrangements. (Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(4).) (5) The court found that the parents were both healthy, physically and mentally, as were the children. (Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(5).) Based upon these findings, the court granted custody, as noted, to the respondent Judith Howard.

As is evident from its findings, the trial court was of the opinion that the children would be in good hands whichever parent was given permanent custody. The principal basis for awarding custody to respondent Judith Howard, rather than to petitioner, was the fact that the children had adjusted well to the Champaign home and that they had lived there, at the time of the hearing upon remandment, for 2½ years. The court concluded, all other things being equal, the children's best interests would not be served by uprooting them from their established environment in Champaign.

■■ ■ The petitioner contends that three of the court's findings of fact were erroneous and contrary to the manifest weight of the evidence. He argues that the court's findings that the children's preferences were ambivalent and uncertain is completely contrary to the evidence. We disagree. We note, at the outset, that the statute specifically states that one factor to be considered by the court is the wishes of the child as to custody (Ill. Rev. Stat. 1977, ch. 40, par. 602(a)(2)), and we have before noted that such wishes should be given serious consideration. (*In re Marriage of Poston* (1979), 77 Ill. App. 3d 689, 396 N.E.2d 576.) In the present case, the trial judge had conducted three interviews with the older children, probing into their preferences as to custody and into the reasons behind those preferences. As noted earlier, in the first two interviews the boys stated a preference for their father, while in the third they told the court they had no preference. In addition to the *in camera* interviews, the court also heard testimony from the children, in court upon remandment, that they enjoyed and liked both their parents and each new spouse and also their homes. We would also note, in passing, that it was counsel for Mrs. Howard who wanted the boys to testify, over objection by petitioner's attorney. The court allowed the boys to testify, but counsel was not permitted to ask them directly any preference they might have as to custody. In view of their *in camera* testimony, the court's knowledge gained therefrom, and the children's testimony in court, we conclude that the court's finding that the wishes of the children were ambivalent and uncertain is supported in the record. We find no error in the court's ruling denying counsel's attempt to question the boys in open court as to a specific preference for one parent over the other. As noted, the court had heard from the boys previously and was acquainted with their wishes and desires and some of the underlying bases for those wishes and desires.

Under such circumstances, it was not error to so limit the open court questioning. We also note that the record before us contains no objection to the court's ruling with regard to that restriction upon questioning.

■ The second finding which petitioner contends is contrary to the manifest weight of the evidence is the court's conclusion that the interaction and interrelationship of the children with each parent and with each new stepparent is satisfactory and equal. We find support for that finding in the evidence. The record indicates that the children loved and got along well with both stepparents. That Mr. Howard is unemployed currently, or that Mrs. Howard works some evenings, does not negatively affect their relationships and interaction with the children. Nor does the fact that Mr. Howard did not testify after remandment, given that he had testified previously. The court's findings on this issue are not contrary to the manifest weight of the evidence.

■■ Petitioner asserts, as contrary to the manifest weight of the evidence, the court's finding that the children's best interests would not be served by a change of custody. As noted earlier, this was the controlling finding in the court's decision on custody. The petitioner argues that the court nowhere stated, and no evidence indicated, that a change in environment would not be in the children's best interests. While conceding the importance of the stability of environment in determining a child's best interests, petitioner asserts that the proper focus should be on stability after a custody award. Certainly, the stability of the future custodial home and the relationships it will entail is a very important factor in arriving at a custody decision. In the instant case the record fully supports a conclusion that each home environment would have provided stability for the boys' growth and development. So far as the proper focus in such matters, the court cannot ignore and overlook current and past circumstances in considering the children's best interests. In this case, the court would have been remiss if it did not consider the fact that the boys had been living in Champaign for over 2½ years. While it is accepted, as stated by the court, that the children could have adjusted to another change of environment, it must also be noted that another change of friends, schools, and daily home life would not have been without some potentially adverse consequences. The importance of stability and continuity in a child's custodial and environmental relationships is an accepted fact, and one which has been emphasized by the legislature and the courts. (See *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499.) In the instant case, we find that considerations of stability and continuity support the trial court's conclusion that continuing custody in the mother was in the children's best interests.

■■ Petitioner asserts that the trial court stated, in giving temporary custody to Judith Howard in June 1977, that its decision was "without

prejudice to either party in seeking permanent custody and no inference in favor of the plaintiff is assumed by virtue of her physical custody of the children." Petitioner sees this statement as directly contrary to the final permanent custody award. We do not find that the court's decision on permanent custody was in any way improperly influenced by its decision to grant temporary custody to the mother. As already stated, the final decision on custody was a result of concern for the stability and continuity of the children's lives, and it would not have served *their* best interests for the court to have ignored the fact that they had been residing with their mother and stepfather in Champaign for well over two years. It must be accepted that their residence in Champaign for that time was the result of the decision on temporary custody and the delay caused by the appeal. However, all factors which relate to the best interests of the children should be considered by the court. Contrary to the dire warnings of consequences if the court's decision is upheld, we perceive no basis for concluding, on the record in this case, that our decision will unfairly advantage the parent who first obtains custody in the determination of the best interests of the children.

■■ Having examined the court's findings and found support for them in the evidence, we turn to issues raised regarding certain findings the court failed to state specifically. Petitioner argues that the court failed to consider all relevant factors, in that the court failed to consider (1) that the petitioner can best provide a stable environment, (2) that the petitioner can devote more time to the children, and (3) that the petitioner could provide the better moral environment for the children. The record in this case indicates that the trial court heard, and considered, the stability and health of the home environments and the moral qualities therein residing. It is also evident that the court was aware of the employment history and daily routines, as well as plans, for all parties. There is no question that such matters were considered by the court, as many are necessarily implicated in addressing the specific factors set forth in the statute, and the lack of specific findings on them is understandable and not error. (*In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 708-09, 395 N.E.2d 208.) On the record, it is clear that the findings of the court were not contrary to the manifest weight of the evidence. It is obvious from the record that the court considered all relevant factors in reaching its difficult decision. For the reasons stated, the judgment of the Circuit Court of Iroquois County is affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.