*In re* MARRIAGE OF DIANE LACQUEMENT ELEOPOULOS, Petitioner-Appellee, and MICHAEL L. LACQUEMENT, Respondent-Appellant.

Fourth District   No. 4—88—0821

Opinion filed July 27, 1989.

Michael W. Atkins, of Springfield, for appellant.

Thomas R. Appleton, of Morse, Giganti & Appleton, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Respondent Michael L. Lacquement appeals from an order entered by the circuit court of Sangamon County on April 21, 1988, granting a change of custody of his minor daughter Maresa to the child's mother, Diane Lacquement Eleopoulos, pursuant to her petition of December 23, 1987. We affirm.

The record reveals the parties' marriage was dissolved on November 19, 1984, and custody of their two children, Karma, age 10, and Maresa, age 2, was awarded to respondent. On January 28, 1986, petitioner filed a petition to modify the judgment of dissolution of marriage, requesting custody of both girls. The petition alleged changes in the environment of the two minor children seriously endangered their physical, mental, moral, and environmental health. Petitioner requested a transfer of custody of the girls in order to serve their best interests. An attached affidavit by petitioner stated Karma had reported that on January 21, 1986, respondent had severely beaten her with a belt. Karma stated she was afraid of her father and did not want to return to his custody. Petitioner had observed numerous bruises on Karma's body.

No hearing on the motion was heard, but by stipulation of the parties, an order was entered on March 3, 1987, which granted custody of Karma to petitioner and ordered that custody of Maresa remain with respondent. The order also provided amended visitation schedules.

On December 1, 1987, respondent witnessed Maresa fall on the steps of her day-care center. Later that evening respondent disciplined Maresa by "popping" her several times with a belt. Respondent testified he continued to "pop" his daughter until he was sure the blows hurt her. Respondent said there were tears in Maresa's eyes. While bathing Maresa the next evening, respondent noticed a large bruise on the right side of Maresa's buttocks. Maresa did not know the bruise was there or how she had received it. She did not complain of tenderness.

Believing petitioner would file abuse charges, respondent telephoned the Department of Children and Family Services (DCFS) to advise them of the bruise. Later in the week, Don Boltz, a DCFS social worker, interviewed Maresa at her day-care center, at which time

she said she did not know how she had received the bruise. After petitioner arrived at the center and talked to her daughter, Maresa said she was bruised because her father had spanked her with a belt.

On December 7, 1987, petitioner filed a petition for an order of protection on behalf of Maresa, alleging respondent had beat Maresa and caused her to suffer a large bruise to her buttocks. In response to the petition, the court issued an emergency order of protection finding "[t]here is reason to believe the child's present environment seriously endangers her physical, mental, moral and emotional health." Maresa was placed in the physical custody of her mother.

On December 23, 1987, petitioner filed a petition to modify the judgment of dissolution of marriage, which alleged the following:

> "That since the time of the entry of the Order entered March 3, 1987, changes have occurred in the environment of MARESA *** which seriously endangers her physical, mental, moral and emotional health. A transfer of her custody to the Plaintiff is necessary to serve the best interest of MARESA *** ."

The attached affidavit of petitioner stated that on December 4, 1987, she "observed a large, deep bruise on the right buttocks, which Maresa advised she had gotten when her father hit her with a belt. *** Maresa further advised that her father had struck her in the face on more than one occasion." On December 24, 1987, the court issued an interim order of protection awarding petitioner temporary legal custody of Maresa.

On January 19, 1988, respondent filed a petition to dismiss petitioner's request for modification of the judgment of dissolution of marriage. Respondent alleged the affidavit filed by petitioner did not comply with the statutory requirements of section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA), because it did not specifically state "there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." Ill. Rev. Stat. 1987, ch. 40, par. 610(a).

After hearing arguments on the parties' respective petitions, the court issued an order and memorandum opinion on April 21, 1988. The court found the March 3, 1987, order did not modify the original custody judgment as it pertained to Maresa. The order merely modified petitioner's visitation rights while Maresa remained in the custody of respondent. Furthermore, the court stated the following:

> "[T]his court finds that on the basis of testimony in a hearing on the Order of Protection, in the verified Petition for an Order of Protection, and the verified Petition for Modification of

Custody, as well as the testimony in the hearing on the Petition to Modify Custody filed December 23, 1987, that there is reason to believe the child's present environment may endanger seriously her physical, mental, moral, and emotional health."

The court ultimately found by clear and convincing evidence that a change had occurred in the circumstances of Maresa and her parents since the original judgment was entered. Those changes were listed as follows:

"1) Maresa was severely bruised near the buttocks while in the care of Michael Lacquement.

2) Maresa has stated to the Court *** that Maresa was hit by her father on the back with a belt with a large buckle resembling a space shuttle.

3) The elder sister, Karma, states that she has previously been hit with that belt by her father.

4) Michael Lacquement's former stepson, Benjamin Whitnall, testifies that he has been abused by Michael Lacquement with that same belt.

5) Mr. Lacquement admits having spanked Karma.

6) Mr. Lacquement admits having spanked Maresa around the time that her bruises were noticed *** and he admits to having used that belt to 'pop' Maresa ***.

7) Michael Lacquement did not call Mrs. Eleopoulos to inform her of Maresa's bruise when he discovered it.

8) Maresa expressed her preference that she live with Diane Eleopoulos and her elder sister, Karma.

9) Diane Eleopoulos has remarried and has established a home with an environment suitable for raising two daughters.

10) Michael Lacquement remarried since the previous custody award and was divorced within a very short period of time since his divorce from Diane Eleopoulos.

11) Michael Lacquement, according to his daughters, Karma and Maresa, spent little time with his daughters when they were in his custody or visiting him, but rather retires to his basement and requires his daughter to clean the home, do the laundry, and cook dinner.

12) Michael Lacquement has a violent temper which he has displayed on several occasions to Mrs. Eleopoulos, Karma, Maresa, and his former stepson."

The court concluded it was in the best interest of Maresa that her custody be awarded to petitioner.

Respondent appeals the order of April 21, 1988, maintaining that:

(1) the March 3, 1987, order of the court, which awarded custody of Karma to petitioner and provided that custody of Maresa would remain with respondent, was a "custody judgment" under the custody modification section of the IMDMA (Ill. Rev. Stat. 1987, ch. 40, par. 610); (2) the December 23, 1987, petition to modify was not sufficiently supported by affidavit as required by section 610(a) of the IMDMA (Ill. Rev. Stat. 1987, ch. 40, par. 610(a)) to entitle petitioner to seek a modification of custody prior to two years after the entry of the prior custody judgment; and (3) the April 21, 1988, order of the trial court modifying custody of Maresa was against the manifest weight of the evidence.

■ Section 610 of the IMDMA states in part:

"Modification. (a) Unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.

(b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, *** and that the modification is necessary to serve the best interest of the child." Ill. Rev. Stat. 1987, ch. 40, pars. 610(a), (b).

■ ■ The original custody judgment was entered in this case when the parties' marriage was dissolved on November 19, 1984. Custody of both girls was awarded to respondent. The court entered a subsequent order on March 3, 1987, modifying the custody of Karma and providing that the custody of Maresa remain with respondent. Although the custody of Maresa did not change, the March 3, 1987, order constituted a new custody judgment based on stipulation of the parties. (See *In re Marriage of Spangler* (1984), 124 Ill. App. 3d 1023, 1026, 464 N.E.2d 1120, 1122.) Specifically, custody of the two children was split and visitation schedules were changed. Accordingly, we find the section 610 determinations by the trial court in this case should have been based on facts occurring since the entry of the March 3, 1987, order, and not since the date the decree of the divorce and original custody order was entered. See *Applegate v. Applegate* (1980), 80 Ill. App. 3d 81, 84, 399 N.E.2d 330, 333.

Since petitioner's December 23, 1987, verified petition to modify

the custody judgment was filed within two years of the March 3, 1987, order, petitioner was clearly required to comply with the affidavit requirement of section 610(a). (Ill. Rev. Stat. 1987, ch. 40, par. 610(a).) The record reflects petitioner in fact filed the requisite affidavit. The question becomes whether the affidavit was sufficient to satisfy the statutory requirements.

The verified petition for modification of custody was filed by petitioner on December 23, 1987. The petition alleged that since the custody order of March 3, 1987, changes had occurred in the environment of Maresa that "seriously endanger[ed] her physical, mental, moral and emotional health." The attached affidavit by petitioner stated (1) petitioner observed a large bruise on the right buttocks of Maresa; (2) Maresa advised petitioner the bruise was the result of blows inflicted by respondent with a belt; and (3) Maresa further advised that respondent had also struck her on the face on more than one occasion. On appeal, respondent again argues the affidavit was insufficient because it did not contain the language required by section 610(a). Ill. Rev. Stat. 1987, ch. 40, par. 610(a).

A party requesting that the court modify a prior custody order within two years of its enactment must comply through the procedural requirements of section 610(a). The court must be informed by affidavit there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health. (Ill. Rev. Stat. 1987, ch. 40, par. 610(a); see *In re Marriage of Farris* (1979), 69 Ill. App. 3d 1042, 1044, 388 N.E.2d 232, 234.) Generally, an affidavit is sufficient to so inform the court if it is attached to and supports the petition requesting modification of a prior custody judgment. Perfect specificity is desired, but is not always required. *Boggs v. Boggs* (1978), 65 Ill. App. 3d 965, 383 N.E. 2d 9.

■ Here, the verified petition contained the exact statutory language of section 610(a), as did the domestic violence order of protection issued by the court prior to the date the petition for modification was filed. The attached affidavit reported a specific instance wherein the respondent struck his daughter with a belt, causing her to suffer a large bruise on her buttocks. This was the same alleged conduct that caused the court to issue the order of protection. Therefore, even though the affidavit did not repeat the statutory language, it was sufficient to inform the court and parties of the facts relied upon for a custody change. (See *In re Custody of Sexton* (1981), 84 Ill. 2d 312, 322, 418 N.E.2d 729, 734 (affidavit requirement considered waived when the facts not sworn to in an affidavit were testified to in open court and the factor of endangerment was alleged in the petition by

means of specific incidents on specific dates).) When considered as a whole, we conclude the documents filed by petitioner satisfied the spirit of the affidavit requirement.

Finally, we consider respondent's argument the April 21, 1988, order of trial court modifying the custody of Maresa was against the manifest weight of the evidence.

■ A trial court must not modify a custody judgment unless (1) clear and convincing evidence shows a material change of circumstances has taken place and (2) modification is in the best interest of the child. (*In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 450 N.E.2d 1385.) Once the trial court has judged the credibility of the witness and determined the needs of the child have overcome the presumption in favor of the present custodian, a court of review will not overturn that decision unless it is contrary to the manifest weight of the evidence. *In re Marriage of Richmond* (1988), 171 Ill. App. 3d 506, 525 N.E.2d 1226.

■ The findings of fact by the trial court in support of the modification of custody listed several changed circumstances surrounding the parties since the March 3, 1987, custody judgment. Without commenting on the propriety of each factor, we find it sufficient the court found respondent had beat his daughter with a belt since the prior custody judgment, causing her to bruise and to fear him. It is significant the court found such circumstances warranted an order of protection be issued pending a final custody determination. Ultimately the trial court determined such a change in circumstance was in the best interest of Maresa.

Respondent relies on the June 15, 1988, *in camera* testimony of Maresa wherein she recanted her prior allegation that respondent gave her a large bruise to her buttocks when he beat her with a belt. The child said petitioner told her to say respondent caused the bruise when in fact she got it when she fell down the steps at her day-care center. At the June 15 hearing, Maresa indicated she wished to return to live with her father. However, the trial court gave little weight to Maresa's testimony, stating: "[I]n the in camera interview, Maresa was very, very upset. She was very confused. In my opinion, I don't know that it is completely clear from the transcript, but she contradicted herself in response to my questions." The court refused to reopen the case and reaffirmed the prior judgment that it was in the best interest of Maresa for her to be in the custody of petitioner.

Other than the testimony of Maresa given after the modified custody order was entered on April 21, 1988, the record in this case justifies that order. Since the trial court heard the many hours of testi-

mony and was in the best position to observe the witnesses and judge their credibility, we will not disturb its decision to modify the prior custody judgment.

The judgment of the circuit court of Sangamon County placing Maresa in the custody of petitioner is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.