*In re* MARRIAGE OF JAMES SEYMOUR, Petitioner-Appellant, and
SCHERYL SEYMOUR, Respondent-Appellee.

Second District   No. 2—90—0411

Opinion filed December 19, 1990.

James R. Truschke and Thomas P. Murphy, both of James R. Truschke & Associates, P.C., of Arlington Heights, and Michael J. DuWaldt, of Franks & Filler, of Marengo, for appellant.

Thomas F. Loizzo, of Kell, Nuelle & Loizzo, of Woodstock, for appellee.

Emery L. Duffy, of Crystal Lake, guardian *ad litem*.

JUSTICE NICKELS delivered the opinion of the court:

Petitioner, James Seymour, appeals the judgment of dissolution of marriage (the decree) entered by the circuit court after three days of trial. He raises two issues: first, that the trial court erred in ordering maintenance of $750 per month when respondent, Scheryl Seymour, was choosing a low-paying vocation; and second, that the trial court erred by granting custody of the parties' daughter, Jana, to respondent. Respondent contends the trial court's rulings regarding maintenance and custody were not an abuse of the court's discretion. The attorney appointed by the trial court to represent the children has also filed a brief in which he asks the court to affirm the custody order but does not address the maintenance issue.

Subsequent to the trial, the circuit court entered a 20-page memorandum which became the basis for the decree. The court summarized the evidence and its impressions of the parties and children. Petitioner was granted the sole custody of Jeffrey, who was almost 18 years old and would soon attend a college or seek employment. Respondent was granted the sole custody of Jana, who was nine years old and in the fourth grade. The decree directed that the children spend weekends together, *i.e.*, together they would spend alternating weekends with the other parent. A visitation schedule was also specified. The court ordered each parent to use 20% of his or her net income for child support, *i.e.*, petitioner would pay 20% of his net monthly salary of $3,230, or $646, and respondent would pay 20% of her net monthly salary of $571, or $114.20. Petitioner was ordered to pay respondent the difference of $532 every month. In addition, the court ordered petitioner to continue deducting $400 per month from his gross income to contribute to a section 401(k) (26 U.S.C.A. §401(k) (West Supp. 1990)) account established for the purpose of financing the children's college education.

The court divided the marital estate with 52% to respondent and 48% to petitioner because respondent would not be able to accumulate capital as a minister or as a teacher and respondent needed more funds to complete her education and preserve her investment in her

vocation. This distribution resulted in a projected total of $86,700 for respondent and $80,000 to the petitioner, before petitioner's vested pension plan was divided. The distribution also included proceeds from the sale of the marital residence, which was to be sold before Jana entered a new school upon her completion of the fifth grade.

The court stated it was troubled in determining the proper amount of maintenance because respondent had chosen a vocation which pays low wages. Nevertheless, the court ordered petitioner to pay respondent $750 per month, subject to review by the court after 30 months. The court offered the following summary of the parties' monthly income:

| Petitioner | | Respondent |
|---|---|---|
| | January through August: | |
| $ 5,416.66 | gross income | $791.66 |
| 3,230.00 | net income | 571.00 |
| -532.00 | net child support | +532.00 |
| $2,698.00 | | $1,103.00 |
| -750.00 | maintenance | +750.00 |
| $1,948.00 | spendable | $1,853.00 |

September through December, after the maximum Social Security tax is paid:

| | | |
|---|---|---|
| $3,630.00 | net income | $571.00 |
| -612.00 | net child support | +612.00 |
| $3,018.00 | | $1,183.00 |
| -750.00 | maintenance | +750.00 |
| $2,268.00 | spendable | $1,933.00 |
| | estimated year-end bonus | |
| 5,000 | bonus | 0 |
| -1,000 | support for Jana | +1,000 |

Petitioner contends in his first argument that the court erred in granting maintenance in the amount of $750 per month when respondent was capable of earning a better salary. Respondent graduated in 1971 with a bachelor of science degree and a teaching certificate that enabled her to teach orthopedically handicapped children. She kept the certificate current although she had made no inquiries into possible teaching positions in over two years and had never in fact used her certificate in a teaching position. For the last few years she had attended Bethany Theological Seminary to become a Congregational minister, and she would graduate in June 1990.

■◼■ A court may award maintenance only if a spouse:

"(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment ***, or

(3) is otherwise without sufficient income." (Ill. Rev. Stat. 1989, ch. 40, par. 504(a).)

The court should consider all factors in determining the amount of maintenance, including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently ***;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

■■■ Petitioner notes that the Illinois Marriage and Dissolution of Marriage Act (Act) creates an affirmative duty on a spouse requesting maintenance to seek and accept appropriate employment. (*In re Marriage of Philips* (1990), 200 Ill. App. 3d 395, 405; *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 328-29.) A spouse cannot use self-imposed poverty as a basis for claiming maintenance when she has the means of earning more income. (*In re Support of McGrew* (1980), 90 Ill. App. 3d 27, 32.) The award of maintenance to a spouse capable of improving her income can be an abuse of discretion. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 719.) While petitioner does not contest respondent's privilege to pursue her vocation, he does not believe that he should be punished by paying a large maintenance award to increase her income when she is capable of earning more and could have proved she could earn more if she started teaching rather than preaching prior to the dissolution of marriage. Petitioner contends that if he chose to become a minister, the court would still order maintenance at a level commensurate with his past earnings.

The trial court in its memorandum addressed these concerns. It noted respondent was seeking more than mere rehabilitative maintenance but a new career as well. The court warned respondent that petitioner was not responsible to support her according to their past standard of living if she was unwilling to work for financial security. The standard of living must fall when the number of households increases but the income does not rise by the same level. The trial court found that exhausting her share of the property distribution before she could seek maintenance was inappropriate. The court cited *In re Marriage of Magnuson* (1987), 156 Ill. App. 3d 691, 699 (the court must consider the amount a recipient can reasonably contribute for her support and rehabilitation), *In re Marriage of Gentry* (1989), 188 Ill. App. 3d 372, 377 (the court has an obligation to monitor a recipient's progress in attaining self-sufficiency), and *In re Marriage of Courtright* (1989), 185 Ill. App. 3d 74, 78 (maintenance kept in force where recipient had made good-faith effort to become self-sufficient after 28 years of homemaking), in its memorandum.

■ The trial court's determination in awarding maintenance will not be disturbed absent an abuse of discretion. (*Philips*, 200 Ill. App. 3d at 405.) While petitioner is correct in his citation of the law, the evidence adduced at trial does not show the trial court abused its discretion. The cases cited by petitioner, while helpful in our determination, are distinguishable in the light of the facts and conduct of the parties in this cause.

In *Wisniewski*, the trial court clearly abused its discretion in awarding $600-per-month maintenance for an indefinite period when the recipient had only a $200 deficit of income over expenses, had a college education, was pursuing a new degree, and would, as a result of the payment, have disposable income of $400 while the payor would be left with only $323. (*Wisniewski*, 107 Ill. App. 3d at 719.) In *McNeeley*, the recipient made no attempt to find employment or to rehabilitate her lack of employment history, and the appellate court ordered that maintenance be reduced and be modified after the passage of enough time for her to establish employment. (*McNeeley*, 117 Ill. App. 3d at 328-29.) In *McGrew*, the recipient received property of $330,000 but failed to lease her lands at a market rate and was also capable of working. *McGrew*, 90 Ill. App. 3d at 32.

■ Based on the facts in the record, the decision by the trial court was reasonable. The amount respondent could earn as a teacher is unknown. She had never in fact earned pay as a teacher. Her degree was 18 years old, and she guessed that she would be required to take refresher courses to qualify for a position. The amount of the

512

payment, $750, is not grossly disparate to petitioner's salary, even after the $400 section 401(k) deduction. The trial court treated the deduction as a subtraction prior to the determination of net income. The trial court decided the respondent's income capability based on the only information available to it. Moreover, the respondent's assertion that she needed $675 per month for rent and $92 per month for electricity, which were based on the mortgage and utility bills for the marital residence, was left unrebutted. Since respondent and Jana were to retain the marital residence until Jana enrolled in a different school, with respondent responsible for the mortgage payments and other costs, it was reasonable for the court to order sufficient maintenance to pay the housing costs. Finally, the trial court ordered the maintenance to be reviewed after 30 months for petitioner's concerns to be addressed, so that, as in *Gentry*, respondent's progress could be monitored and the amount of the maintenance adjusted according to her actual needs at that time and according to the lifestyle imposed by her chosen vocation. Therefore, we affirm the trial court's determination regarding maintenance.

■ Petitioner also argues that the trial court erred in granting custody of Jana to respondent. Petitioner contends that the two children should not have been separated and the semblence of the family unit broken when Jeffrey and Jana related well with one another. (*Temple v. Temple* (1977), 52 Ill. App. 3d 851.) Although Jana expressed her desire to live with respondent, such a preference is not dispositive (*In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53), especially when an older and more mature child has stated a preference to live with the other parent (*Rosenberger v. Rosenberger* (1974), 21 Ill. App. 3d 550, 553). Petitioner also alleges that respondent waged a campaign to influence Jana's preference and that the testimony of Jana's counsellor, Dr. Schaper, was biased by his affiliation with respondent's church and employer.

■ ■ The trial court's determination of custody will not be reversed unless there has been a clear abuse of discretion or the decision was contrary to the manifest weight of the evidence. (*In re Marriage of Wiley* (1990), 199 Ill. App. 3d 169, 175.) The trial court has broad discretion over the matter of custody, which is governed by section 602 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 602). (*Wiley*, 199 Ill. App. 3d at 175.) The primary and paramount consideration is the best interest and welfare of the child. (199 Ill. App. 3d at 175.) We do not believe the record reflects that the trial court abused its discretion in granting custody of Jana to respondent.

■ Traditionally, courts have held that a custody order which

separates siblings is not considered to be in their best interests, but it can be under some circumstances. (*In re Marriage of Hazard* (1988), 167 Ill. App. 3d 61, 70.) Jeffrey is now 18 years old and at the time of the trial was intending to attend college. Thus, the fact of the separation will become moot in a short period of time. Moreover, any weight given to the eldest child's preference was reduced in this case by the trial court's finding that Jana was relatively mature for an eight-year-old girl. (See *In re Marriage of Edsey* (1990), 199 Ill. App. 3d 39, 55.) Keeping a family together is not an overriding factor when there is a substantial disparity in the ages of the siblings and other important factors are in the best interests of a young child. (199 Ill. App. 3d at 56.) In this cause, the trial court found many factors which supported the finding that it was in Jana's best interests to stay with her mother.

Jana, during her *in camera* testimony, stated that she loved both her parents and did not want to hurt either of them by choosing the other; nevertheless, she felt more comfortable living with her mother, with whom she could talk more freely. While she enjoyed many fun activities with petitioner, such as sledding or skating, and appreciated his help with mathematics and art and his good care of her, she also enjoyed going to church, choir and bell ringing with respondent.

Jana stated her decision was not influenced by respondent's search for an apartment with a swimming pool, especially since respondent had chosen a different apartment. The trial court had the opportunity to observe and to hear the child testify and was in the best position to judge the witness' credibility. (*In re Custody of Sussenbach* (1985), 108 Ill. 2d 489, 499.) The record supports the trial court's finding because Jana was bright and engaging and well articulated the reasons underlying her preference. We will not disturb the trial court's finding.

The trial court further found that both parties had tried to influence Jana's choice by buying ice cream and enlisting and involving the children in the various disputes. Each party complained that the other party had attempted to undermine the other's discipline and authority. The trial court was fully aware of respondent's attempts to influence Jana but still found Jana made an independent decision regarding with whom she would live. We note here that the trial court did find both parties to be loving and concerned parents and that both were fit and proper persons for custody. Each party admitted that the other party was a good parent.

Dr. Schaper also testified that, after several counseling sessions with Jana, he determined that she expressed her preference

for living with respondent. Jana had stated to him her preference in words and in exhibits she had prepared with his instructions. Dr. Schaper stated that he had made no recommendations to Jana and that he could not render an opinion regarding the capabilities of either of the parties to be a custodial parent, although he thought a mother was a better role model for a daughter. Dr. Schaper also admitted that he was affiliated with the United Church of Christ, which was respondent's church and employer, that respondent had been primarily paying the bills for counseling Jana, that he had counseled respondent independently, and that when a child is asked with whom she would rather reside, the child will more likely choose the parent that physically brought the child to the counselor, namely, the respondent. A court is not obliged to follow the advise of an expert. (*Edsey,* 199 Ill. App. 3d at 55.) The trial court noted that petitioner was suspicious of Dr. Schaper's motives but stated that it could determine no bias or prejudice in his evaluation caused by his affiliation or his greater exposure to respondent. The record reflects he was candid about his education and the scope of his evaluation. The items created by Jana which formed part of his opinion that Jana did in fact prefer to reside with respondent were introduced into evidence. The trial court's finding was not manifestly erroneous, and we will not disturb this finding.

The trial court's decision to choose a custodial parent when both parents are fit and capable is always difficult. The record reflects that the trial court considered all the relevant factors, the bias in the witnesses and the campaigns to influence the children's preferences. We cannot say the trial court abused its discretion and must affirm the custody determination.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and BOWMAN, JJ., concur.