*In re* MARRIAGE OF AMY JO BALZELL, n/k/a Amy Jo Naqvi, Plaintiff-Appellant, and GREGORY A. BALZELL, Defendant-Appellee.

Third District   No. 3—90—0148

Opinion filed January 15, 1991.

Sandra M. Pellegrino and William F. Morris, both of Peoria, for appellant.

Susan Butler, of Morton (Anthony P. Corsentino, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The marriage of petitioner Amy Balzell (Amy) and respondent Greg Balzell (Greg) was dissolved by a judgment of the circuit court of Peoria County. Amy appeals, contending the court erred (1) in finding this case to involve an initial custody determination rather than a modification of a custody judgment and (2) in finding that their only child, Chantel Balzell (Chantel), had no custodial preference. Greg cross-appealed the trial court's awarding grandparent visitation, contending he was not given proper notice and an opportunity to be heard on the issue.

Amy and Greg were married on August 20, 1983. Chantel was born on December 13, 1983. Greg and Amy separated on November 8, 1984. On August 13, 1985, Amy filed a petition for dissolution of marriage. A temporary child support hearing was held on September 24,

1985. There, the court entered an order directing Greg to pay child support on a biweekly basis in an amount equal to 20% of his net income. A hearing was also held on October 31, 1985, at which time the court entered a judgment of dissolution of marriage. In the judgment, the court noted that Chantel has resided with her mother since the date of separation. The court also reserved ruling on all issues except the marital status of the parties. On May 5, 1987, the court dismissed the case for want of prosecution.

Pursuant to an agreement entered into by Greg and Amy on June 18, 1987, Amy turned custody of Chantel over to Greg. The agreement allowed Greg to take custody of Chantel for a period of 30 days. It was further agreed that after the 30-day period expired, Amy was to decide whether to give Greg full custody of Chantel. On November 6, 1987, Greg filed a petition for temporary relief alleging that he had custody of Chantel from June 19, 1987, and that Amy had left the State of Illinois. The petition also requested that he be awarded temporary custody of Chantel and that his child support payment obligations be abated. Amy subsequently filed a motion to dismiss claiming the court did not have jurisdiction.

A hearing on the motion to dismiss and petition for temporary relief was held on December 11, 1987. By agreement, an order was entered providing that the parties were to share joint temporary custody of Chantel, *pendente lite*, in alternating periods of four months for each party.

On September 23, 1988, Greg filed a petition for modification and review. The petition alleged that "a material change in circumstances has now occurred and factors now exist to make the aforementioned split custody provision inappropriate." An order was entered on March 13, 1989, granting Greg's petition to modify and directing that temporary custody of Chantel shall remain with Greg subject to Amy's right to visitation.

After a four-day trial, the trial court issued its memorandum of decision on June 26, 1989. The court, after evaluating the case according to the factors found in section 602 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*), found Chantel to have no preference as to custody and found it to be in her best interest to award custody to Greg. Amy appeals.

Amy first contends the trial court improperly applied the best interests of the child standard found in section 602 of the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 602.) Amy claims the matter before the trial court was not a first instance custody proceeding subject to section

602 but, rather, was a modification of custody proceeding subject to section 610. Section 610 requires, *inter alia*, the petitioner prove there are changed circumstances warranting a modification of an existing custody arrangement. (See Ill. Rev. Stat. 1989, ch. 40, par. 610.) Amy argues the June 26, 1989, order amounts to a post-decree modification of a September 24, 1985, order which Amy alleges granted her permanent custody of Chantel. Under this theory, the temporary support order became a permanent custody order. Since judicial discretion to make post-decree modifications of custody is limited to situations where, by clear proof, there has been a material change of conditions or the parent with custody has been shown to be unfit, and since, according to Amy, neither circumstance was demonstrated during the trial, she argues the trial court abused its discretion in awarding custody to Greg.

Greg, on the other hand, contends Amy is engaging in a not-so-creative semantic exercise in suggesting a temporary child support order is actually a child custody order. Greg claims the matter before the court on September 24, 1985, was a temporary child support order and had nothing to do with custody. He further notes if Amy truly believed the September 24, 1985, order had given her permanent custody of Chantel, she would never, by agreement, have stipulated for the entry of a consent order awarding both parties the temporary joint custody of Chantel on December 11, 1987.

■■ ■ We will not disturb the trial court's determination of custody unless it is against the manifest weight of the evidence or is manifestly unjust. (*In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 548 N.E.2d 109.) In the instant case, we cannot accept Amy's characterization of the September 24, 1985, order as a permanent custody order. It was a temporary child support order. In addition, the record reveals the parties had an ongoing dispute as to custody. During the pendency of this dispute, the trial court entered various orders modifying the temporary custodial, residential, and visitation arrangements. There is nothing in the September 24, 1985, order to suggest a temporary or permanent custodial arrangement had been decided by the trial court. Accordingly, because we find the instant case to constitute an initial custody proceeding, the trial court properly applied section 602 of the Act.

Amy next argues the trial court's finding Chantel had no custodial preference was against the manifest weight of the evidence. Amy asserts the trial court erred in failing to specifically ask Chantel whether she had a custodial preference and in assuming Chantel had no custodial preference due to her response that she enjoyed staying

with her mother in Virginia and her father in Illinois. Amy claims Chantel, in an interview with a Prince George County (Virginia) social worker, expressed a preference for living with her mother and visiting her father.

■ Greg argues there is no requirement for a trial court to ask such a question and the more sensitive courts do not ask that question but obtain an inference from the totality of the child's statements. Even if Chantel unequivocally indicated a preference for living with Greg or Amy, this preference, while entitled to consideration, would not be binding on the trial court. (*In re Marriage of Kush* (1982), 106 Ill. App. 3d 233, 236, 435 N.E.2d 921, 923.) Under these circumstances, therefore, the trial court did not err in failing to specifically ask Chantel whether she preferred to live with her father or her mother.

■ There is a strong and compelling presumption in favor of the trial court's determination of custody. (*Cooper v. Cooper* (1986), 146 Ill. App. 3d 943, 497 N.E.2d 805.) This is so because the trial court is in a better position to evaluate the credibility, temperaments, personalities, and capabilities of both parents through the proceedings. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 715, 463 N.E.2d 773, 778.) The record shows both parents to be good parents and that Chantel enjoys a good relationship with both. The trial court noted such and ruled that, in its opinion, awarding custody to Greg was in Chantel's best interest. Under all of the circumstances in the instant case, we cannot say the award of custody to Greg was against the manifest weight of the evidence.

In addition, Greg contests the trial court's awarding grandparent visitation rights to Amy's parents. He argues visitation privileges can be extended to grandparents only when it is shown that special circumstances beyond mere mutual affection exist to justify an order awarding such visitation. He further notes the grandparents did not intervene in the case and that he, therefore, was not given proper notice as required by section 607(b) of the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 607(b).) Amy counters, asserting Greg testified that if he had custody it would facilitate Chantel continuing her strong relationship with her grandparents, whereas now, on appeal, he argues that he wasn't given notice of any grandparent visitation.

■ There are only two ways for a trial court to award grandparent visitation: (1) when there are special circumstances; and (2) when a grandparent petitions the court under section 607(b) of the Act. In the instant case, no special circumstances have been established to warrant the granting of grandparent visitation rights, and the grand-

parents failed to petition the court under section 607(b). We, therefore, reverse the trial court judgment on this matter and affirm the trial court judgment in all other respects.

Reversed in part; affirmed in part.

GORMAN and SLATER, JJ., concur.