*In re* MARRIAGE OF MARY CATHERINE HEFER, n/k/a Mary Catherine Sprinkle, Petitioner-Appellant, and THOMAS W. HEFER, Respondent-Appellee.

Fourth District    No. 4—96—0017

Argued June 18, 1996.—Opinion filed July 11, 1996.

74

Gerald L. Timmerwilke (argued), of Lewis, Blickhan, Longlett & Timmerwilke, of Quincy, for appellant.

Steven Nardulli (argued), of Stratton & Nardulli, of Springfield, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

The reply brief in this case was due May 30, 1996. Oral argument was heard June 18, 1996. Because we reverse an award of custody, we have given this case priority over our other work.

The parties were married in April 1976. They have two children, Brandon (born May 18, 1981) and Lauren (born July 1, 1985). Petitioner, Mary, is a registered nurse. Respondent, Thomas, is a carpenter. The parties lived in Staunton until December 1989, when they separated and Mary moved with the children to Springfield. The parties attempted reconciliation at various times, and in March 1991, decided to build a house in Chatham. Mary and the children moved into the house in June 1991, but Thomas did not.

Mary filed a petition for dissolution of marriage on June 21, 1991. On October 21, 1991, the trial court entered an agreed order awarding temporary custody to Mary. On July 17, 1992, the court entered a bifurcated judgment of dissolution which reserved permanent custody and other issues. In August 1992, Mary married Michael Sprinkle, and in March 1994, Thomas married Bonnie Hefer. In April 1994, Thomas and Bonnie moved to Indianapolis, where he is employed as a carpenter at the Indianapolis Speedway. Thomas was to have had two weeks of visitation during the summer of 1994, but after problems developed with his return of the children Thomas gave up

his second week of visitation. Thomas and Bonnie had a daughter born in February 1995. Thomas testified he reduced his phone calls to Brandon to once per week in the period immediately prior to trial because money became too tight. Testimony was heard on April 3, 1995, and on April 19, 1995. At that time Thomas had not seen the two children since Christmas. Also on April 19 the court conducted an *in camera* interview of Brandon, then 13, and Lauren, then 9.

On May 22, 1995, the trial court entered its memorandum opinion and ruled as follows regarding custody:

> "The major dispute between the parties centers around custody of Brandon and Lauren. During the pendency of this litigation Mary Catherine has been the primary custodian of the children. Thomas has sought to maximize his involvement with the children although his move to Indianapolis, Indiana[,] has somewhat limited his time with the children. Both parties presented substantial testimony on the issue of custody and on the resolution of the question concerning the best interests of the children. That testimony established that both parents have strengths and weaknesses as parents. When the evidence with respect to custody is closely balanced, the Court believes that greater deference should be given to the wishes of the children as long as the Court is satisfied that the children's wishes are based upon factual matters and not merely some hopeful thought that one parent will grant the children more favors. In the present case the Court believes from the evidence presented at trial that the concerns, beliefs, and the wishes of the children as expressed in the *in camera* interviews are bona fide. Accordingly the Court finds that it is in the best interest of the minor children that custody be awarded to Thomas Hefer."

Mary then filed a motion to reopen the evidence alleging that the children had been unduly influenced by Thomas and his family prior to the *in camera* interviews. Mary's affidavit, attached to the motion, stated that she had spoken to Lauren after the court ruled, and Lauren told her about two conversations with Bonnie before the interviews. First, Lauren said that Bonnie "had taken Court papers and laid them on the table to her about the case *** saying look what your mother is trying to do." Second, Lauren said she was "told to tell the judge she wanted to live with her father and not tell anyone of the discussion if asked." An unsent letter from Brandon and Lauren to Thomas and Bonnie was attached to the motion. In it the children asked, "Do you know when [we're] going to the judge?" Also attached to the motion was a letter from Thomas' mother to the children stating, "if possible, write down things you want to say to the judge." On September 5, 1995, the trial court denied the motion

to reopen the evidence, but did find Thomas in contempt for denying visitation in late August 1995.

It is unfortunate that after the temporary order was entered October 21, 1991, the permanent order of custody was not entered until May 22, 1995. "Custody proceedings shall receive priority in being set for hearing." 750 ILCS 5/606(a) (West 1994). The parties were free to remarry after the court's order of July 17, 1992, but custody was left hanging until 1995. Even if the parties wanted additional time to argue property issues, there should have been a permanent decision on custody within a reasonable time after the case was filed. It is stressful to children, and to others as well, to leave this issue up in the air. The temporary order in this case was an agreed order. In cases where there is no agreement and a substantial amount of evidence is heard on a temporary order, the trial court may be well-advised to make its permanent decision after the first hearing and not conduct a second hearing on a permanent order. See *In re Marriage of Goldman*, 196 Ill. App. 3d 785, 796-97, 554 N.E.2d 1016, 1024-25 (1990).

■ The trial court in its custody decision gave controlling weight to the preference expressed by the children in the *in camera* hearing. One of the factors which the court may consider in determining custody in accordance with the best interest of the child is "the wishes of the child as to his custodian." 750 ILCS 5/602(a)(2) (West 1994). Nevertheless, there are problems with making the decision of the child the determinant. For one thing, such an approach places a tremendous amount of pressure on the child.

> "[I]t is seldom in a child's interest to be asked to choose between his parents or to believe that his expression of preference will influence the judge's decision. Children often lack the maturity to make a wise choice. And choosing tends to create feelings of disloyalty toward one parent which can be quite devastating for the child as well as for the mother or father whom he 'rejects.' Indeed, this is why the law requires that the custody decision in the end be made by adults." S. Goldstein & A. Solnit, Divorce & Your Child 67 (1984).

The more sensitive courts do not specifically ask a child whether he prefers to live with his father or his mother. *In re Marriage of Balzell*, 207 Ill. App. 3d 310, 314, 566 N.E.2d 20, 22 (1991). A better way than an *in camera* hearing to get the child's preferences before the court may be through admission of the child's hearsay statements, through the testimony of a guardian *ad litem*, or through professional personnel. *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 415-16, 639 N.E.2d 897, 904 (1994).

There are other problems with relying upon the wishes of the child. Such reliance provides an incentive for parental manipulation and intimidation of the child, and an opportunity for the child's manipulation of the parents, none of which can be said to be in the best interest of the child. See *In re Marriage of Apperson*, 215 Ill. App. 3d 378, 381, 574 N.E.2d 1257, 1259 (1991) (mother would buy son new Reeboks, basketball hoop for driveway, and a dog); *In re Marriage of Seymour*, 206 Ill. App. 3d 506, 513, 565 N.E.2d 269, 273 (1990) (search for apartment with a swimming pool and other attempts to influence child); *In re Marriage of Eleopoulos*, 186 Ill. App. 3d 374, 381, 542 N.E.2d 505, 509 (1989) (child recanted testimony father beat her with a belt). The means for exerting parental influence can be subtle, and the typical brief *in camera* interview may not be adequate for uncovering even blatant influence. S. Novinson, *Post-Divorce Visitation: Untying the Triangular Knot*, 1983 U. of Ill. L. Rev. 121, 188 n.326, 189. Rigorous examination of a child to discover tampering may be counterproductive. The motion to reopen evidence in this case raised serious questions about the *in camera* hearing, and resolution of those questions would no doubt have been stressful to the children. Again, courts must be careful in conducting *in camera* interviews and in relying on the wishes of the children in determining custody.

An important consideration in determining custody under the best-interest-of-the-child standard is stability of environment, *i.e.*, consideration of which parent has been caring for the child. One of the statutory factors a court must consider is "the child's adjustment to his home, school and community." 750 ILCS 5/602(a)(4) (West 1994); *Hall v. Hall*, 226 Ill. App. 3d 686, 691, 589 N.E.2d 553, 556 (1991) (with other factors evenly balanced, error to award custody to father when child had been with mother during $2^{1}/2$ years of litigation). Where there has been a lengthy period of temporary custody, the case may be more like a petition to modify custody than like an initial award of custody. See *Wycoff*, 266 Ill. App. 3d at 408, 639 N.E.2d at 902-03. A court must consider the "interaction and inter-relationship" of the child with his parents, siblings, and others, and it is significant if a child has not had much contact with one parent. 750 ILCS 5/602(a)(3) (West 1994). It is appropriate to consider which parent has been the primary caretaker of the children. See *In re Marriage of Bush*, 191 Ill. App. 3d 249, 263, 547 N.E.2d 590, 598 (1989); see also *In re Marriage of Eaton*, 269 Ill. App. 3d 507, 513, 646 N.E.2d 635, 641 (1995) (primary custodian "dealt with all the day-to-day child-care issues a single parent faces" from date of separation until hearing on removal petition).

■ Section 501 of the Illinois Marriage and Dissolution of Marriage Act (Act), dealing with temporary relief in general, provides that a temporary order entered under this section does not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings. 750 ILCS 5/501(d)(1) (West 1994). No similar provision appears in section 603 of the Act, dealing with temporary custody orders. 750 ILCS 5/603 (West 1994). A court may consider the period of time that a child has spent with a parent by virtue of a temporary custody order (*Wurm v. Howard*, 82 Ill. App. 3d 116, 121-22, 402 N.E.2d 407, 411-12 (1980)), but there is no presumption in favor of the existing custodian under section 602 as there is in modification cases under section 610. *Wycoff*, 266 Ill. App. 3d at 414, · 639 N.E.2d at 902-03.

It could be argued that giving weight to periods of temporary custody makes it unlikely parties will amicably and voluntarily enter into temporary custody agreements. The answer to that argument is that a parent who wishes to contest custody should be required to do so at the earliest possible time. It might also be argued that the temporary custodian will be inclined to delay the hearing on permanent custody in order to lengthen the period of temporary custody. That is alleged to have happened in this case. We are confident, however, that when concern over intentional delay is brought to the attention of the trial court a setting will be forthcoming. What is important is not that the parties have a level playing field for their custody battles. What is important is the best interest of the child. It is wrong to allow a child to put down roots, then move him to a new location without a good reason for doing so.

■ Section 609(a) of the Act provides:

"The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of the child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609(a) (West 1994).

Although we have found no cases discussing the matter, it seems clear that section 609 of the Act applies to cases like the present, where the party seeking custody has moved to another state before the permanent order of custody is entered. Section 609 specifically states that it applies "before or after judgment." 750 ILCS 5/609(a) (West 1994); see also *In re Marriage of Akins*, 188 Ill. App. 3d 951, 951-52, 544 N.E.2d 1131, 1131 (1989) (mother filed petition for leave to remove before hearing on permanent custody).

The paramount question in a removal case is whether the move is in the best interests of the children. An initial award of custody under section 602 of the Act is also decided on the basis of the best interest of the child, but there is a difference. Section 609 of the Act requires a determination that *the move* is in the best interest of the child. *In re Marriage of Smith*, 172 Ill. 2d 312, 320 (1996). Although indirect benefits may be considered (benefits which would result to the children from enhancement of the custodial parent's life if the move were allowed), requiring children to leave familiar surroundings and establish new relationships with friends and community members often burdens children with stress and pressure. *Smith*, 172 Ill. 2d at 323. Removal is often harmful to visitation. *Smith*, 172 Ill. 2d at 324.

■ The trial court is not required to make specific findings regarding each section 602 factor as long as evidence was presented from which the court could consider the factors prior to making its decision. *In re Marriage of Stribling*, 219 Ill. App. 3d 105, 107, 579 N.E.2d 6, 8 (1991). The trial court has broad discretion in making a custody determination; however, its discretion is not unlimited, and when the award is contrary to the manifest weight of the evidence, it is the duty of the reviewing court to reverse that decision. *In re Marriage of Bush*, 170 Ill. App. 3d 523, 529, 525 N.E.2d 163, 166 (1988) (reviewing court's examination of record revealed that trial court improperly relied on "tender years" doctrine); *In re Marriage of Haslett*, 257 Ill. App. 3d 999, 1008, 629 N.E.2d 182, 188 (1994).

■ The stability-of-environment argument supports giving deference to the decision of the trial court because by the time the case reaches the reviewing court the child has usually been in the custody of the successful parent for a considerable period of time. The court in *In re Custody of Townsend*, 86 Ill. 2d 502, 515, 427 N.E.2d 1231, 1238 (1981), ignored the three-year period before reversal as "attributable to the sometime pace of our judicial process, and not to any hesitation or delay on the part of [the] natural father," but that statement has been criticized. 2 H. Clark, Domestic Relations § 20.6, at 535 (2d ed. 1987) ("the effect on the child is the same regardless of the source of the delay"). Although the period of litigation should be considered, it may still be possible to find that an award of custody was contrary to the manifest weight of the evidence.

■ The testimony in the *in camera* hearings in this case is unexceptional. Both children testified they wanted to live with Thomas, but it is at least possible, as Mary argued, that "the children's preference to live with their father is rooted in normal animosity toward their mother because their mother disciplines the

children and makes them do homework." Both children testified they got along well with their mother, although Brandon said his mother "screamed" at him when she got mad, and "put down" Thomas and Bonnie. In contrast, his father would sit him down and talk to him, although his father used to have a bad temper (when Brandon lived with him?). Brandon testified there has not been much visitation since his father moved to Indianapolis, 14 months before the permanent custody order was entered. Lauren testified she and her father do activities together, but she did not do many things with her mother because her mother was usually spending time with Mike. Lauren was doing well in school, although Brandon recently was experiencing some difficulty. Both children said they got along well with the teachers at Chatham and had many friends at school and in the area. Brandon testified that when he visits his father they go to the racetrack and out to eat. Because Brandon and Lauren have not spent much time with their father, their hopeful evaluation of him may not be entitled to as much weight as it would be under different circumstances.

It favors the award of custody to Thomas that the children expressed a preference to live with him and that they have adjusted to living with him during the period of this appeal. There are other factors, however, which favor an award of custody to Mary. Mary was the sole custodian of the children during the four years the temporary custody order was in effect and during some of the two previous years after the parties initially separated. While the parties resided together, Mary was the primary custodian. The trial court found no serious objection to the children's care while they were in Mary's custody. Thomas now lives in Indianapolis, and an award of custody to him will require that the children leave their home and friends in Chatham. While the matter was being considered by the trial court, Thomas interfered with Mary's visitation. In deciding custody under the best-interest-of-the-child standard, the court shall consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." 750 ILCS 5/602(a)(8) (West 1994).

A judgment is against the manifest weight of the evidence when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary or not based upon the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996). We hold the custody decision of the trial court to be against the manifest weight of the evidence in this case.

We reverse the decision of the trial court and remand for reconsideration of this initial order of custody in light of the views

expressed in this opinion. On remand, the trial court may conduct a brief hearing at which the parties may update the evidence presented at the last hearing, including the children's adjustment to their home, school, and community in Indianapolis. The court may receive input from the children, via an *in camera* hearing or otherwise. We are hopeful a decision can be made before school resumes in the fall.

We have considered the other issues argued by Mary on appeal, that the trial court erred in refusing to reopen proceedings, that Thomas should have been found in contempt in connection with his return of the children following visitation in 1994, and that Mary should have been allowed to purchase the Chatham home for a figure net of the likely realtor's commission, and find those issues to be without merit.

Reversed and remanded with directions.

GREEN and KNECHT, JJ., concur.