127 Ill. App.3d 530 (1984)
469 N.E.2d 386
In re CUSTODY OF JACQUELINE M. BOUREY (David Giagnoni, Petitioner-Appellee,
v.
Julie Bourey, Respondent-Appellant).
No. 2-83-0721.
Illinois Appellate Court  Second District.
Opinion filed September 24, 1984.
Rehearing denied October 18, 1984.
*531 Jo Ann L. Nieman, of Waukegan, and Janet Rubel, of Chicago, for appellant.
Anderson, Bazos, Kramer & Castillo, of Elgin, H. Joseph Gitlin, of Woodstock, and David Giagnoni, of McHenry, for appellee.
Affirmed in part and reversed in part.
PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:
Julie Bourey, the mother of an infant child, Jacqueline M. Bourey, appeals an order of the circuit court which awarded custody of the child to the putative father, David Giagnoni.
Petitioner, David Giagnoni, and respondent, Julie Bourey, both 18 years old at trial, had dated for 2 1/2 months when Julie first suspected she was pregnant. In January 1982, she became depressed under the stress of the expected pregnancy, took an overdose of a cold medication, and was admitted to Ridgeway Hospital, where the pregnancy was confirmed. After discussions with her parents, David, and her doctor, she determined it would be in the best interest of the child if it were adopted. David at first refused to surrender his parental right, then signed the surrender paper, revoked his surrender within the three-day period, told Julie he would sign the paper again, but finally refused to surrender his right.
After the child was born, September 2, 1982, she lived for a week in a foster home while Julie lived in David's father's apartment with David. When it became apparent David would not agree to the adoption, Julie decided to take custody of the child.
On October 13, 1982, David filed a petition seeking custody of the child. On the same day Julie filed a paternity action (Ill. Rev. Stat. 1983, ch. 40, par. 1351 et seq.). The court consolidated the actions, and Julie filed a counterpetition for custody.
After hearing testimony from the parties, Julie's father, David's mother, and a social worker, the trial judge, in his letter of decision, applied the general guidelines of section 602 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1983, ch. 40, par. 602.) The court rejected the "tender years" doctrine, finding that there is no longer a presumption in Illinois that a mother should have *532 custody of a young child simply because she is the mother. In seeking the "most stable environment for the child," the court determined that Julie showed "less emotional and mental stability" than David. The letter concluded:
"[C]onsidering all of the factors involved, including the mental and emotional stability and maturity and all other factors referred to and circumstances surrounding the birth of the child, it is the Court's opinion that the custody of the minor child, * * * should be awarded to the father, David B. Giagnoni provided he shall be able to raise her with the assistance of his mother; otherwise, the child shall remain in the custody of the natural mother."
The final order, filed August 8, 1983, awarded custody to David, omitting the provision that he is to raise the child with the assistance of his mother. Julie was ordered to pay $24 per week child support.
Julie filed a post-trial motion raising the new fact that a named individual has proposed marriage to her, and also raising, in a memorandum of law, the objections to the ruling raised on appeal here.
Notice of appeal was filed August 23, 1983. This court stayed enforcement of the trial court order. On August 26, 1983, pursuant to the stay and the posting of an appeal bond, the trial court returned custody to Julie.

I
Julie initially contends that the trial court erroneously applied section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 602) to resolve the custody issue. We note that the trial judge in his letter announcing his opinion applied the "best interest of the child" standard and noted that he had examined section 602 "for a general guideline in determining the best interest of the child."
 1 The question of what statute applies to proceedings for custody of a child of unmarried parents is not clearly agreed in Illinois law. Traditionally, habeas corpus (Ill. Rev. Stat. 1983, ch. 110, par. 10-101 et seq.) has been held to be the proper proceeding in which to determine a custody dispute between unmarried parents. (People ex rel. Edwards v. Livingston (1969), 42 Ill.2d 201, 208; In re Ritchie (1978), 58 Ill. App.3d 1045, 1050.) In actions between an unwed biological parent and grandparents, the Probate Act (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 11-7) has been applied. (In re Custody of Townsend (1981), 86 Ill.2d 502, 509; In re Custody of Roberts (1982), 107 Ill. App.3d 913, 915.) In one appellate decision the Illinois Marriage and *533 Dissolution of Marriage Act was applied in custody proceedings between unmarried parents. (In re Custody of Myer (1981), 100 Ill. App.3d 27, 32.) However, the Illinois Supreme Court has refused to apply the Illinois Marriage and Dissolution of Marriage Act to determine property rights between unmarried partners, referring to legislative policy behind the Act and also to that behind the statute making common law marriages invalid. (Hewitt v. Hewitt (1979), 77 Ill.2d 49, 61-62. See also In re Mac Harg (1983), 120 Ill. App.3d 753 (attorney fees).) We need not, however, and do not, decide which act applies since the best interest of the child guides the decision, no matter what form the proceedings may take. See In re Custody of Townsend (1981), 86 Ill.2d 502, 509; In re Custody of Roberts (1982), 107 Ill. App.3d 913, 915; In re Ritchie (1978), 58 Ill. App.3d 1045, 1051.
In the application of the best-interest-of-the-child test to a custody dispute between unmarried parents, we also recognize that there is no longer a presumption in favor of either parent. See, e.g., People ex rel. Slawek v. Covenant Children's Home (1972), 52 Ill.2d 20, 22; People ex rel. Irby v. Dubois (1976), 41 Ill. App.3d 609, 612.

II
 2 The trial court has broad discretion in awarding custody. (In re Marriage of Mitchell (1981), 103 Ill. App.3d 242, 244.) The trial court's decision is not to be disturbed unless contrary to the manifest weight of the evidence or unless it works manifest injustice. (In re Marriage of Pool (1983), 118 Ill. App.3d 1035, 1039.) After examining the record, however, we conclude that the trial judge's ruling that the consideration of the best interest of the child dictated that custody be given to the putative father is against the manifest weight of the evidence.
 3 The United States Supreme Court has recognized that its prior decision giving a cognizable and substantial interest to an unmarried father in the care and custody of a child (Stanley v. Illinois (1972), 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208) does not foreclose the consideration that the unmarried father's "interests are readily distinguishable from those of a separated or divorced father * * *." (Quilloin v. Walcott (1978), 434 U.S. 246, 256, 54 L.Ed.2d 511, 520, 98 S.Ct. 549, 555). In Quilloin, the court noted that in a marriage relationship "even a father whose marriage has broken apart will have borne full responsibility for the rearing of his children during the period of the marriage." (434 U.S. 246, 256, 54 L.Ed.2d 511, 520, 98 S.Ct. 549, 555.) Other courts have applied Quilloin, distinguishing between the process due a putative father who has established *534 a custodial relationship with his child or who has provided support to the mother of the child before notice of the custody hearing, and that due those who have not. (See In re Barlow (1978), 404 Mich. 216, 226-27, 273 N.W.2d 35, 38.) A putative father has been required to show a substantial concern for the child before he has been given standing to assert his interests. (See Kendrick v. Everheart (Fla. 1980), 390 So.2d 53, 60.) Thus, we conclude that the conduct of an unmarried parent in meeting the responsibility of providing for the child and of establishing a significant relationship with the child must be considered among the circumstances which the trial court must recognize in determining the best interest of the child.
These factors weigh substantially against the father, although the trial court found both parties to be fit parents. Until ordered by the court, and even after that, David did not meet his support obligations. In fact, the record shows that he has been held in contempt of court for what the court found to be a wilful and contumacious refusal to do so. From the record it also appears that he has seen the child only for brief periods, which he spent with his mother.
 4 Julie, on the other hand, has been supporting the child, paying $50 per week as rent to her father and $40 per week for baby care. She and her family appear to have paid the medical bills with little contribution from David. She has taken full care of the child. She has taken her for regular medical check-ups and has baptized her in the Catholic faith. She has purchased most of the child's toys and clothing, while David has purchased few.
Other facts in the record similarly support the conclusion that custody should properly be awarded to Julie. Julie outlined plans for the future, including a budget allowing her to live on her own with Jacqueline and to be in school while continuing to work, but David outlined no plans except to live with his mother while he continues his work. David's mother, divorced from his father, is unemployed and resides with her elderly mother and second husband. David testified that he would live with his mother should he get custody and that she would help him care for the child.
On the facts before him, the trial judge found that the parties' qualities were evenly balanced but awarded custody to the father, concluding that he was more mature. However, the facts show a mother who had been caring for her child for approximately seven months at the time of trial, for approximately one year at the time of the final order (and who has now had custody for another year pending this appeal), and who had made plans to care for her in the future, compared to a father who had not met his court-imposed obligations *535 and who had made no plans to care for the child except to move in with his mother. We conclude that the manifest weight of the evidence shows that Julie has made more responsible plans concerning custody of the child. Considering all of the factors, the judgment awarding the custody to the father is against the manifest weight of the evidence.

III
Julie has challenged the award of fees to the attorney who was appointed to represent the interest of the child. The court had the power to appoint an attorney to best represent the interest of the child. (Pelham v. Griesheimer (1982), 92 Ill.2d 13, 24.) The attorney fees were presented in a written report to which Julie objected generally but failed to object specifically. We conclude that the attorney fees were properly ordered. See In re Marriage of Brophy (1981), 96 Ill. App.3d 1108, 1121.
The judgment of the circuit court of McHenry County awarding custody to the father is reversed, the judgment awarding attorney fees is affirmed.
Affirmed in part; reversed in part.
NASH and HOPF, JJ., concur.