*In re* CUSTODY OF CHRISTINA HORBATENKO, a Minor (Eugene Horbatenko, Plaintiff-Appellant, v. Antonia Lepkyj, Defendant-Appellee).

First District (3rd Division)   No. 86—2598

Opinion filed November 30, 1988.

William Sulkin, of Chicago, for appellant.

Diane Redleaf and David Rubman, both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Eugene Horbatenko, appeals from a judgment of the circuit court of Cook County awarding sole custody of Christina Horbatenko to her natural mother, Antonia Lepkyj. On appeal, plaintiff argues that the trial court abused its discretion in (1) awarding sole custody to Antonia and (2) questioning Eugene about his employment to determine his plans of caring for Christina. We affirm.

Christina, born December 21, 1978, is the daughter of Eugene Horbatenko (Eugene) and Antonia Lepkyj (Antonia). Although they lived together from 1977 to 1980, Eugene and Antonia never married. Since 1980, Christina has lived with her mother.

Antonia's mental state was an issue at trial. Eugene testified that after Christina was born, Antonia experienced "mood swings." Antonia agreed that she was depressed when she lived with Eugene. However, Antonia recognized that she was in need of professional help and in February of 1982, Antonia attended Northwestern Hospital. While at Northwestern, Antonia was diagnosed as a manic-depressive. Northwestern then referred Christina to a special Mother's Project administered by Thresholds, a psycho-social rehabilitation agency. At the time of trial, Antonia was attending Thresholds. She was also having test runs every six months to monitor her medication of lithium and trilafon.

Christina began attending Thresholds' therapeutic nursery school program in February 1982. She graduated in September of 1984. In addition to school, Christina attends church and is involved in dancing and Ukranian lessons.

Eugene lives alone in a studio apartment. He testified at trial that he makes his living as a real estate developer although he has no real estate license. Eugene stated that he is also a landlord and works one day per month collecting rent from his properties. When questioned about how he would care for Christina, Eugene stated that she would move into his studio apartment with him and they both would later move to a "good" neighborhood. If he could not take care of Christina, Eugene stated that he would hire a baby-sitter.

In August of 1982, Eugene filed a petition for custody of Chris-

tina. On September 1, 1982, the court granted Eugene a visitation order. However, his visitation was halted by a court order of September 30, 1982, when the director from the Mother's Project at Thresholds filed a report with the Department of Children and Family Services. The report alleged that Eugene had physically abused Christina during one of their visits together.

On November 4, 1982, Eugene was granted supervised visitation of Christina on a weekly basis. A second physical abuse report was later filed after Eugene allegedly struck and bruised Christina on a visit in January of 1983. Following a court hearing, Eugene was awarded day-long unsupervised visits. However, following another string of court appearances and allegations of physical and sexual abuse, Antonia made a motion to have Eugene's visits supervised. Eugene refused to have supervised visitations and ceased to visit with Christina in December 1984.

At trial, five mental health experts testified. Dr. Margery Johnson stated that Christina is a lively, talkative and somewhat agitated child. Although suffering from emotional disturbances, Christina is learning well in school. According to Dr. Johnson, Antonia, although anxious and agitated at times, is gaining insight into her problems and is trying to do better. When questioned by the court, Dr. Johnson was of the opinion that

> "Christina should continue in the custody of her mother. I don't feel that there's been sufficient grounds to disrupt that relationship."

Dr. Mary Ann Zeitz is the director of the Mother's Project at Thresholds. She testified that Christina has difficulty controlling her impulses and demonstrates a manipulative behavior. However, Antonia's tendencies to become agitated cease when she takes her medication. It is Dr. Zeitz' opinion that Antonia takes her medication regularly and that a manic-depressive person can be a good parent.

Dr. Eugene Stern, a court-appointed psychiatrist testified that a manic-depressive can go into total remission when medication is taken properly. It was Dr. Stern's opinion that there is "no psychiatric basis for interrupting the present custodial arrangements."

Both Dr. Edward Michaels, a psychologist at Children's Memorial Hospital, and Mr. Marvin Couture, a psychiatric social worker, testified. They offered no opinion or recommendation as to who should be granted custody of Christina.

On September 5, 1986, the court entered a judgment awarding custody of Christina to Antonia and a support order for Christina. This appeal followed.

Eugene first argues that the trial court erred in awarding sole custody of Christina to Antonia. It is Eugene's position that the trial court's decision was against the manifest weight of the evidence because (1) it did not give due consideration to the mental health of Antonia and Christina in determining the best interest of Christina; (2) the award of custody to Antonia, a mentally ill mother of a mentally ill child, seriously endangers Christina's emotional and mental health contrary to her best interest; and (3) Antonia's actions in changing Christina's surname, accusing him of child abuse and denying him visitation were against Christina's best interest. We believe that Eugene's arguments are without merit.

■ In a child custody suit, a trial court has broad discretion in awarding custody. The trial court's decision will not be disturbed on review absent a finding that its decision was contrary to the manifest weight of the evidence or that it works manifest injustice. *In re Custody of Bourey* (1984), 127 Ill. App. 3d 530, 533, 469 N.E.2d 386, 388.

■ In *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208, the United States Supreme Court recognized that unmarried fathers have a cognizable and substantial interest in the care and custody of their children born out-of-wedlock. However, the Court also recognized that an unmarried father's "interests are readily distinguishable from those of a separated or divorced father" in that "even a father whose marriage has broken apart will have borne full responsibility for the rearing of his children during the period of the marriage." (*Quilloin v. Walcott* (1978), 434 U.S. 246, 256, 54 L. Ed. 2d 511, 520, 98 S. Ct. 549, 555.) Because a putative father must show a substantial concern for the child prior to acquiring standing to assert his interest, his conduct in establishing that significant relationship with the child and in meeting the responsibility of providing for the child are factors that must be considered in determining the best interest of the child. *In re Custody of Bourey* (1984), 127 Ill. App. 3d 530, 534, 469 N.E.2d 386, 388.

■ In the case at bar, the record clearly establishes that the trial court properly allowed Christina to remain living with Antonia. Christina has lived with her mother for the past eight years. Although Antonia was diagnosed as a manic-depressive, she takes her medication on a regular basis. One of the experts, Dr. Zeitz, testified that in her opinion Antonia takes her medication and that a manic-depressive can be a good parent. Moreover, the record establishes that Christina is in counseling, is learning well in school and is an active participant in the children's program at Thresholds. According to the testimony of three of the five experts at trial, it was in the best interest of Chris-

tina not to interrupt the present custodial arrangements.

On the other hand, we see no evidence from the record evincing a significant relationship between Eugene and Christina. Nor do we find any evidence that he is prepared to meet the responsibility of providing for Christina. Moreover, although we do not pass judgment on the validity of the complaints lodged against him, we do note that the record establishes that more than one child abuse report has been filed against Eugene regarding incidents that occurred when Christina visited him. None of the experts testified that it would be in Christina's best interest to live with her father on a permanent basis. In fact, the court stated that Eugene

> "did not present any plan of what to do with the child, how he could get the child ready, how he could get the child to school other than to say that his work permits him to give that time. *** I find the evidence limited on his attempts or actual accomplishments relative to the support of the child, both economically and financially."

Christina is settled in her school and play environment. She has established her friendships and play and school routine. We see no overwhelming evidence in favor of disrupting the stability and continuity in Christina's environment. Accordingly, we find that the trial court considered what was in the best interest of Christina and properly allowed custody to remain with her mother.

Eugene next argues that the trial court erred in the manner in which it questioned him concerning his employment in determining his plans for caring for Christina. Eugene argues that the trial court (1) departed from its role of judge and assumed the role of advocate in examining Eugene regarding his financial affairs and (2) erroneously considered Eugene's failure to file an income tax return in deciding the issue of custody. We find this argument without merit.

■ The trial court has the right to question a witness for the purpose of eliciting the truth or clarifying material issues which seem obscure. The only requirement is that the court's questioning be conducted in a fair and impartial manner. *People v. Gross* (1988), 166 Ill. App. 3d 413, 422, 519 N.E.2d 1043, 1050.

■ In the instant case, the court's questions followed elusive and ambiguous testimony from Eugene regarding his employment and financial status. It was not clear from Eugene's testimony what his source of income was and how he planned to provide for Christina. As the court amply stated:

> "[Eugene] failed to present an organized plan for the care of the child, and it is indicative from his testimony that his work

habits seem[ ] to be somewhat of a mystery. The Petitioner did not in any way present an organized type of employment."

After thorough review of the record, we conclude that the trial court did not impermissibly assume the role of advocate but merely sought to clarify evidence proffered by Eugene.

Furthermore, Eugene's contention that the trial court improperly considered his failure to file an income tax is baseless. As the record clearly indicates, when Eugene testified that he had not filed an income tax return in 10 years, the trial court stated:

"I will expect Mr. Sulkin to advise his client as to all of the intricacies relative to my further questioning concerning his obligation to the Internal Revenue Service and his income.

\* \* \*

I expect you to advise him of the Fifth Amendment and of the activity, criminal activity and civil activity and the liability he might very well face in responding to my questions.

\* \* \*

I will expect that to happen and I will expect that to happen prior to any inquiry from me or from the respondent in connection with this matter."

To argue that the trial court considered evidence that it instructed Eugene's counsel to properly advise his client of the ramifications of such is ludicrous. In light of all of the evidence before us, we find that the trial court properly allowed custody of Christina to remain with Antonia. We further find that the support order entered was reasonable.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

WHITE, P.J., and FREEMAN, J., concur.