ROBERT T. HALL, Petitioner-Appellee, v. REBECCA J. HALL, a Minor, *et al.*, Respondents-Appellants.

Third District No. 3—91—0019

Opinion filed October 31, 1991.—Rehearing denied April 28, 1992.

GORMAN, J., dissenting.

Ehlers Law Firm, of Bloomington (Randall B. Ehlers, of counsel), for appellants.

Thomson & Weintraub, of Bloomington (Donald W. Wilcox, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Dawn Rippel, the unmarried mother of Rebecca J. Hall, appeals from the judgment of the circuit court of Marshall County awarding permanent custody of Rebecca to her father, Robert T. Hall. The issue on appeal is whether the trial court's determination that it was in the child's best interest that custody be awarded to the father is contrary to the manifest weight of the evidence.

Rebecca was born June 2, 1987. At the time, her mother was 17 years old and her father, nearly 23. Dawn and Rebecca initially lived at home with Dawn's parents on a farm outside of Toluca, Illinois, and Robert lived with his parents a few miles away. In September 1987, Dawn, Robert and Rebecca set up housekeeping in a home situated approximately equidistant between the Hall and Rippel homes. They lived together until Dawn and Robert had a serious argument and physical confrontation in May 1988. At that time, Dawn left with Rebecca. In early June 1988, Dawn rented a home outside of Rutland, Illinois, and has continued to live there with Rebecca throughout these proceedings. Robert still lives alone in the house in Toluca. On June 16, 1988, when Rebecca was just a year old, Robert initiated this

suit seeking a judicial declaration of his paternity, and custody, visitation and support determinations. Dawn admitted Robert's paternity and resisted his other requests for relief.

The matter proceeded doggedly for more than two years through numerous, protracted hearings, culminating with the judge's oral ruling from the bench immediately after counsel's closing arguments. This was followed by a written decision two months later granting sole permanent custody to Robert on January 28, 1991. In February, Dawn filed a timely notice of appeal. Rebecca was four by the time this appeal was heard. It is not over for her. While it is most certainly not in the child's best interest to perpetuate this custody battle, for reasons that follow, we find that the court's determination to grant permanent custody to Robert cannot be sustained.

The bulk of the testimony presented to the trial court consists of the parties' exchanges of charges of isolated incidents of misconduct, carelessness or the exercise of immature judgment. There is testimony tending to corroborate such charges and further testimony tending to discount them. The details need not be repeated because they are only marginally relevant, at best. The impact of such testimony is simply that these parents were young and unprepared to be parents when Rebecca was born. Both parents have made mistakes and both have acknowledged incidents of poor judgment in their pasts. They have matured in many respects throughout this period of litigation. Perhaps only in the interest of currying judicial favor they have achieved success in modifying or eliminating destructive habits and inappropriate behavior, and they have begun to demonstrate some willingness to cooperate in decisions pertaining to Rebecca. Both Dawn and Robert have strong support from their respective families, and all grandparents are anxious to provide the nurturing and care Rebecca needs while her parents work. The record discloses that Rebecca is a bright, affectionate, well-adjusted child. She relates well to both of her parents and to both sets of grandparents.

Expert testimony of record from two psychologists, Ms. Leone Legan and Dr. Eric Ward, would support a decision to grant custody to either parent, or to fashion a joint custody agreement. Extensive testimony by the grandparents as well as expert testimony from the psychologists about how Rebecca related to each grandparent during interviews conducted in the psychologists' respective offices was admitted into evidence. Dawn and her mother, Rose Rippel, who had been Rebecca's primary care-giver and babysitter, respectively, provided insight into Rebecca's daily schedule. Likewise, Robert and his parents testified about Rebecca's conduct and activities during

Robert's visitation periods. Ms. Legan interviewed Dawn and Robert, each in the company of Rebecca when she was 18 months old, and evaluated them as potential custodians. Ms. Legan expressed concern about Robert's susceptibility to substance addiction. She also found that Rebecca and Dawn had a "bonded" relationship that she did not observe with Robert. Based upon her various tests and interviews, Legan favored not disrupting Rebecca's custodial arrangement; however, upon further questioning by the court, Legan also recommended that both parents and the grandparents could benefit from family counselling to create a more cooperative atmosphere for the child's benefit.

Dr. Ward, in addition to interviewing and evaluating the parents, conducted separate interviews of the grandparents and of two of Dawn's friends, Larry and Paul, in Rebecca's presence. Dr. Ward's interviews were conducted between July 1989, when Rebecca was just two years old, and October 1990. Dr. Ward observed that Rebecca was equally comfortable with both parents, but that she seemed to respond more readily to directions from the Hall grandparents. He also observed that Mrs. Rippel acted nervous when Rebecca resisted leaving Dawn so that she could be observed with the maternal grandmother. Ultimately, it was Dr. Ward's suggestion that this was a unique situation in which the court might consider joint custody with on-going mediation of custody disputes.

■■ ■ In a custody dispute, the primary consideration is the best interest and welfare of the child. Because the trial court is in a better position to evaluate the demeanor and conduct of the parties and witnesses, the court's decision is given great deference and will not be disturbed on appeal unless such decision is contrary to the manifest weight of the evidence. (*In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 548 N.E.2d 109; *In re Custody of Bourey* (1984), 127 Ill. App. 3d 530, 469 N.E.2d 386.) Regardless of whether the parents have ever been married, the statutory factors listed in section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 602(a)) (the Act) are relevant in determining a child's custody. (*In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 418 N.E.2d 947; *Bourey*, 127 Ill. App. 3d 530, 469 N.E.2d 386.) This is not to say that statutory list is exclusive or that the trial judge must recite each factor upon which the court's determination is made; but where nonstatutory factors are considered determinative of the custody decision, such factors should not remain obscure, and the weight of the evidence of record must support the custody decision.

In the court's ruling granting sole custody to Robert, the court specifically noted that "no significant consideration was given to evidence of Dawn Rippel's prior misconduct outside the presence of the child" and that the court had "considered all relevant factors, including the applicable factors listed at ch. 40 Ill. Rev. Stat. sec. 602."

In her appeal to this court, Dawn argues that, despite the court's recitation of the applicable statutory section enumerating "best interest" factors, the court's determination that granting custody to Robert was in Rebecca's best interest is contrary to the manifest weight of the evidence. In support of this argument, Dawn points out that the weight of Robert's evidence related to isolated incidents of Dawn's misconduct as a teenager, most of which were either before Rebecca's birth or outside of the child's presence. Of course we agree with the trial court that such testimony was largely irrelevant to the custody decision, and these incidents should not have been a determining factor, either singularly or cumulatively.

Dawn also points out that the trial court may have given undue consideration to testimony tending to compare the relative parental abilities of the parties' parents. We note in this regard that at one point, in denying a motion to strike testimony, the court stated that this is a case "where the grandparents will really be the parties who will be raising the child" and that "the nature and character they display on the witness stand and project is often more important than the particular information they are disclosing." While we recognize that the record on appeal does not disclose credibility factors such as the witnesses' demeanor, it does not appear that the trial court found one set of grandparents significantly more believable than the other. On the other hand, the testimony they provided coupled with that of Dr. Ward does reveal differences between the Rippels and the Halls. These several differences, however, are subtle with respect to the relevant issue before the court and certainly do not provide a basis for determining which of Rebecca's parents should be awarded custody.

■ Dawn argues further that the court failed to give adequate consideration to statutory factors that should have weighed in her favor. We find this argument persuasive. In particular, section 602(a)(4) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 602(a)(4)) requires that the court consider as a relevant factor the child's "adjustment to his home." Although the "tender years doctrine"—a presumption favoring the mother—has been abrogated in this State (*Kennedy*, 94 Ill. App. 3d 537, 418 N.E.2d 947), we have repeatedly emphasized the importance of maintaining stability and continuity in a young child's environment. *In re*

*Custody of Walters* (1988), 174 Ill. App. 3d 949, 529 N.E.2d 308; *Bourey*, 127 Ill. App. 3d 530, 469 N.E.2d 386.

■ In this case, although they both work outside the home, both Dawn and Robert took responsibility for Rebecca's day-to-day care for the nine-month period when they all lived together. Prior thereto and after the break-up, Dawn has provided primary care for her daughter. The record on appeal clearly demonstrates that Rebecca is now comfortably settled into her life with Dawn as her primary care-giver and the Rippel grandparents as day care providers. Dawn's work schedule as an insurance claims data typist is regular—eight hours a day, five days per week, with no overtime or week-end shifts. Also clear is the fact that Robert has maintained an abiding interest in Rebecca and has not shirked his support obligations. However, his work schedule is less structured. Certainly, had the custody determination been rendered in a more timely fashion, the "stable environment" factor would not have weighed significantly in Dawn's favor. However, there is no denying that after 2½ years of litigation, during which time Rebecca has spent most of her life in her mother's home and to all appearances has developed remarkably well, a clear environmental factor has developed that has not been given adequate consideration by the court. Given that all other discernible relevant factors are evenly balanced and that a significant factor, the young child's stable environment, clearly tips the scale in favor of awarding custody to Dawn, we must conclude that the court's decision to grant custody to Robert is contrary to the manifest weight of the evidence.

Although we are loathe to prolong this custody determination, we find it necessary to remand this cause. This case is unusual in that both parents and both sets of grandparents who provide child care during the parents' working hours continue to live in close proximity to one another. Both parents and both sets of grandparents have demonstrated their love for Rebecca and their ability and willingness to provide proper care for her. Dawn and Robert have a history of noncooperation with only recent indications that some effort to get along for Rebecca's sake is being made. Nonetheless, they are both relatively young and continue to mature in their attitudes and conduct. The record contains a detailed proposal for joint custody and mediation of custody disagreements. Because the relevant factors other than factor 602(a)(4) are so evenly balanced in this case, rather than reversing the custody determination outright, we believe that the court on remand should first give serious consideration to Dr. Ward's recommendation of joint custody. If the court determines that joint

custody cannot be implemented, then an order should be entered granting sole custody to Dawn with liberal visitation for Robert.

The judgment of the circuit court of Marshall County is reversed and this cause is remanded for further proceedings.

Reversed and remanded with directions.

STOUDER, P.J., concurs.

JUSTICE GORMAN, dissenting:

The myriad of facts as they relate to the awarding of permanent custody of the minor, Rebecca J. Hall, are set out accurately in the majority opinion. During the course of the hearing there was extensive testimony from two psychologists and extensive testimony regarding the relationship of the child with her parents and grandparents. The primary consideration is correctly stated to be the best interest and welfare of the child.

Considering the statutory factors listed in section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 602(a)), I am unable to conclude that the decision of the trial court is contrary to the manifest weight of the evidence. *In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 548 N.E.2d 109.

I therefore dissent from the opinion of the majority.