NOTICE

Decision filed 11/22/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210015-U

NO. 5-21-0015

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| BLAIRE M. MURRAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 12-F-48 |
| | ) | |
| BRIAN LEMAY, | ) | Honorable |
| | ) | James L. Roberts, |
| Respondent-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1 *Held*: The circuit court properly denied a father's motion to modify parenting time where the father failed to establish that a substantial change in circumstances had occurred since the entry of the original order allocating parenting time.

¶ 2 The petitioner, Blaire M. Murray, and the respondent, Brian Lemay, are the parents of two minor children. On October 29, 2019, the parties entered into an agreement concerning the allocation of parenting time and parental decision-making responsibilities. On November 23, 2020, Brian filed a motion to modify the parties' agreement with respect to parenting time. The circuit court entered a judgment denying Brian's motion, finding that Brian failed to prove a substantial change in circumstances. Brian now appeals from the circuit court's judgment. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      Blaire and Brian had two children together: L.M.L., who was born in June 2011, and L.D.L. who was born in July 2015. In November 2017, issues arose between Blaire and Brian concerning the allocation of their respective parental responsibilities. Blaire, therefore, filed a *pro se* motion for custody of the children. On November 30, 2017, the circuit court entered an agreed order that simply read, "By agreement of the parties, [Brian] shall have parenting time as follows: every Thursday and every other weekend until Sunday at 6:30 p.m. starting November 30th, 2017." This order did not address the allocation of any other parental responsibilities including decision-making responsibilities, and the record does not reflect any orders addressing parental responsibilities entered prior to this November 30, 2017, order. On December 5, 2017, the circuit court entered an order setting Brian's monthly child support obligation at $637.18 per month and directing Brian to pay Blaire an additional $106.71 per month for the children's medical expenses.

¶ 5      After the entry of the above-described orders, Blaire and Brian continued to have disputes concerning Brian's parenting time and child support obligation. On February 21, 2019, Blaire filed a *pro se* motion alleging that Brian had failed to pay the court ordered child support and was not following the November 30, 2017, agreed court order with respect to Brian's allowed parenting time. Blaire also alleged in the motion that Brian wanted "joint custody," but that she did "not fully agree on certain things with him." The *pro se* motion made these allegations but did not include any specific prayer for relief.

¶ 6      On June 17, 2019, Brian, through counsel, filed a motion to modify parenting time and child support. In his motion, Brian alleged that the children resided with Blaire and that Brian was a fit and proper person to have joint decision-making responsibilities and joint parenting time. Brian asserted that, by agreement with Blaire, he had been exercising parenting time with the

children more for than 50% of the time. Brian further alleged that he was supporting the children while they were in his care and that his income had substantially changed. Therefore, he requested a reduction in his child support. Brian's counsel subsequently withdrew from this case prior to the hearing on Brian's motion and on Blaire's *pro se* motion.

¶ 7    On October 29, 2019, the parties appeared in court *pro se* for a hearing on the pending motions. There is no transcript of this hearing in the record, but the circuit court's docket entry establishes that Brian and Blaire reached an agreement with respect to the allocation of parental responsibilities of the children. The record also establishes that the circuit court approved the parties' agreement. Although there is no transcript of this hearing, the entire record establishes that, at the time of this hearing, Blaire was married or engaged to be married to William Crays, who was serving on active duty in the United States Army and was stationed at Fort Lee, Virginia. The record further establishes that Blaire and William expected the United States Army to station William in Florida in March 2020. Brian was aware of William's pending assignment to Florida, and, at the hearing, Brian agreed that Blaire could relocate the children to Florida five days after the children finished the 2019-20 school year.

¶ 8    The circuit court entered a handwritten order that set out and incorporated the terms of the parties' agreement. The October 29, 2019, order provided Blaire with sole decision-making authority for the children in all areas except for an express exception for the 2019-20 school year as set out in the order. The parties agreed that the children would complete the 2019-20 year in the Illinois school that they were enrolled in at that time and that Brian would be the residential parent for the children for school purposes until five days after the last day of the 2019-20 school year. Five days after the 2019-20 school year, Blaire would become the designated residential parent and would then have sole authority to select the children's schools. Again, Brian entered into this

agreement knowing and understanding that Blaire would move the children to Florida following the 2019-20 school year.

¶ 9     The parties agreed that Brian would have all parenting time through the end of the 2019-20 school year except as otherwise provided in the order or agreed to by the parties. Beginning five days after the last day of the 2019-20 school year, Blaire would have all parenting time except as otherwise provided in the order or agreed to by the parties.

¶ 10     The parties agreed that Brian would have parenting time for major holidays beginning with the 2020-21 school year and the majority of the parenting time for the summers after the 2020-21 school year. The parties agreed to divide the 2020 summer parenting time and agreed to later determine the beginning and ending times for the holiday and summer parenting times. The October 29, 2019, order stated that child support issues would be addressed in a separate order.

¶ 11     On November 1, 2019, the circuit court entered an order modifying Brian's child support obligation. In setting the amount of Brian's child support, the circuit court noted that it was deviating lower than the statutory guidelines due to the parties' agreement to deviate from the guidelines "based on agreement due to co-parenting." The circuit court also found that, at the time of the hearing, Brian owed Blaire $1379.35 for past child support and medical expenses for the children. However, the circuit court noted in the order that Blaire "wishes to waive all child support arrearage and interest due & owing to her as of today's date 10-29-19, child support arrearage is $0.00 & no interest." According to Brian, he agreed to the allocation of parental responsibilities as set out in the October 29, 2019, order in exchange for Blaire waiving her claim for back child support and interest.

¶ 12     Following the entry of the October 29, 2019, order, the United States Army delayed William's transfer to Florida due to COVID-19. The transfer had been scheduled to take place in March 2020, but William remained stationed in Virginia in March 2020. Also in March 2020, the

4

children were released from their school due to COVID-19. The children then relocated to Virginia and resided with Blaire and William in Virginia from March 2020 until May 2020. In May 2020, Blaire moved back to Illinois with the children during a period in which she and William were having relationship issues. After sorting out their differences, Blaire returned to Virginia in July 2020 to help William prepare for their move to Florida.

¶ 13    When Blaire returned to Virginia in July 2020, she left the children in Brian's care so the children could start school in Illinois in August 2020, and so the children would not have to be involved with the moving process. According to Blaire, she and Brian agreed that the children would start school in Illinois but that once she was settled in Florida or the children had a major school break, the children would then reside with her in Florida.

¶ 14    By late September 2020, Blaire had settled in Florida, and in early October 2020, Blaire began discussions with Brian about the children relocating to Florida. Specifically, in October 2020, Blaire sent Brian a Facebook message[1] asking Brian, "Can I get the kids after xmas break?" Brian responded, "no they need to finish the school year out here but yes you can have them for xmas vacation." In another message Brian told Blaire, "I think they should stay here I'm having [s]econd thoughts on everything they're gonna miss everything that we do with them as a family they're going to miss their family." Brian, therefore, refused to allow Blaire to relocate the children to Florida. Blaire and Brian each hired an attorney.

¶ 15    On November 17, 2020, Blaire filed a petition for indirect civil contempt alleging that Brian was not complying with the terms of the October 29, 2019, order allocating the parties' parental responsibilities. Blaire alleged in her petition that she and Brian had agreed that the

_____

[1]Screen shots of a portion of a Facebook message between the parties on October 13, 2020, were admitted by the circuit court as petitioner's Exhibit 1. Brian admitted the authenticity of the messages.

5

children would begin the 2020-21 school year in Illinois until she moved and settled in Florida. Blaire alleged that after she was settled in Florida, Brian refused to return the children to her.

¶ 16    On November 23, 2020, Brian filed a motion to modify the allocation of the parties' parenting time that was set out and agreed to in the October 29, 2019, order. The circuit court's denial of this motion to modify parenting time is the subject matter of Brian's appeal.

¶ 17    In his motion, Brian alleged that there had been a change of circumstances since the October 29, 2019, order in that Blaire had relocated to the State of Florida with William and had lived there for several months. Brian further alleged that after Blaire moved, the children had remained in his sole and exclusive care and that he had enrolled the children in school in Montgomery County, Illinois. Accordingly, Brian contended that it was in the children's best interest that the circuit court modify the parties' parenting agreement so that Brian was designated as the primary residential parent while setting out a parenting time schedule for Blaire. On December 17, 2020, Brian filed his response to Blaire's petition for indirect civil contempt alleging that the parties had "by their own admission" deviated from the October 29, 2019, parenting time order. Brian asserted that Blaire could not enforce the October 29, 2019, order when the parties had voluntarily chosen not to follow the order. Brian also argued that the children should not be abruptly taken away from their school.

¶ 18    On December 17, 2020, the circuit court conducted an evidentiary hearing via Zoom on all pending motions. The parties were present with counsel at the hearing. Blaire testified that she had provided the majority of the caretaking functions for the children in the two years prior to the October 29, 2019, order and that Brian had parenting time on Thursdays and every other weekend during that period. Blaire testified that she and William were living in a 31-foot-long camper in an RV campground in Holt, Florida, and that she was employed at Walmart.

6

¶ 19    Blaire explained that pursuant to the terms of the October 29, 2019, order, she and Brian agreed that she would have the sole decision-making authority and that she alone would select the children's schools after the 2019-20 school year. The parties had agreed that Brian would have his parenting time during the summer and major holidays. Blaire further explained that the language used in the October 29, 2019, order was worded to accommodate her planned move with the children to Florida after the 2019-20 school year.

¶ 20    Blaire testified that Brian was aware of her plan to move to Florida and that in exchange for Brian agreeing to the terms incorporated into the October 29, 2019, order, which included allowing the children to move to Florida, Blaire agreed to eliminate Brian's child support arrearage. Blaire further explained that for the 2020-21 school year, she and Brian agreed that, due to the delay in William's transfer to Florida, the children would start school in Illinois and that once Blaire was settled in Florida or the children had a major school break, the children would then relocate to Florida and live with her in Florida.

¶ 21    According to Blaire, in late September 2020, she was finally settled in Florida, and she began discussions with Brian concerning arrangements for the children to come to Florida. Blaire stated that she and Brian had discussed the possibility of the children remaining with Brian in Illinois for the remaining of the school year. However, because Blaire would be in Illinois for Thanksgiving or Christmas, she wanted the children to return to Florida with her after those holidays.

¶ 22    Blaire testified that she was unable to return to Illinois for the Thanksgiving holiday. However, at the time of the hearing, the Christmas holiday was approaching. Blaire told the circuit court that she would be in Illinois for Christmas and wanted to take the children back to Florida with her after the Christmas holiday. Blaire explained, however, that Brian refused, stating that he had second thoughts and wanted the children to finish out the school year in Illinois.

¶ 23    When asked why she wanted the children to live with her in Florida, Blaire stated that she believed that the school system was better in Florida, that she missed the children, and that the plan had already been in place for her to move to Florida with the children when she and Brian agreed to the terms of the October 29, 2019, order, but that COVID-19 had delayed the relocation plan. Blaire reiterated that, pursuant to the terms of the October 29, 2019, order, she had the sole decision-making responsibility for deciding where the children would go to school and had sole decision-making responsibility. Blaire requested that she be allowed to take the children with her to Florida and that Brian be held in indirect civil contempt for not abiding with the agreed terms set out in the October 29, 2019, order.

¶ 24    On cross-examination, Blaire acknowledged that she and William were currently residing in a 31-foot-long camper in an RV campground, that they would continue to reside in the camper for the time being to save money, and that they did not have a current plan to obtain a permanent residence. Blaire also told the circuit court about the children coming to live with her in Virginia in March 2020 and her returning to Illinois with the children in May 2020. Blaire explained that when she moved back to Illinois in May 2020, she and Brian agreed to a "week on, week off" parenting time schedule until Blaire returned to Virginia in July 2020 to prepare for the move to Florida.

¶ 25    Blaire testified that she did not have any concerns with the children's school in Illinois, with Brian's residence, or with Brian's mother and fiancé providing care for the children. When asked whether she had separated from William in May 2020, Blaire explained that she and William had had their "disagreements" and had lived apart during May and June 2020, when she returned to Illinois. Blaire then explained that she and William resolved their differences and that she returned to Virginia in July 2020, leaving the children with Brian while she and William prepared to relocate to Florida. Blaire testified that she had contacted the school in Florida to arrange for

8

the children to be registered for school there. On redirect examination, Blaire stated that the children would not have been in Brian's care at the time of the hearing if had Brian returned the children to her as she requested in September 2020.

¶ 26     Brian testified that he resided in Panama, Illinois, and was employed for a construction company. Brian acknowledged that, when he agreed to the terms of the October 29, 2019, order, he understood that Blaire would be moving with the children to Florida. He further acknowledged that Blaire had agreed to forgive his child support arrearage and that Blaire's forgiveness of his child support arrearage was one of the reasons he agreed to the terms of the October 29, 2019, order. Brian testified that he refused to return the children to Blaire in September 2020, based upon his belief that the children should finish the school year in Illinois. Brian testified that he believed he had the right to make this decision pursuant to the October 29, 2019, order.

¶ 27     Brian based his position on the children's current enrolment in school in Illinois and his belief that it would be easier to place the children in a new school at the beginning of a new school year. When questioned whether it was his choice where the children went to school, Brian replied: "[W]hen they are here? Yes and no. And when they are down there, no." Brian stated that the children were enrolled in Beckemeyer school and were doing "magnificent," describing the progress the children had made. Brian further testified that his and Blaire's extended family lived locally in Illinois, and he described his residence where the children had their own room.

¶ 28     According to Brian, when Blaire left to return for Virginia, the parties agreed the children would remain with Brian "for the foreseeable future" so that Blaire could establish her residence in Florida while saving money to either build or buy a house. Brian explained that the substantial change in circumstances alleged in his motion to modify parenting time was Blaire's moving to Florida, although he admitted to knowing of Blaire's intent to move to Florida with the children when he agreed to the terms of the October 29, 2019, order.

9

¶ 29    On cross-examination, Brian agreed that Blaire left the children with him so that she could get settled in Florida but added that "it wasn't supposed to take this long." Although Brian told the circuit court that Blaire "could have come and got" the children in September or October, he also acknowledged that his messages to Blaire in October 2020 indicated that Blaire could have the children only for the children's Christmas vacation.

¶ 30    William testified at the hearing, describing his relationship with the children. He told the circuit court that one of the reasons why he and Blaire married was so he could place the children on his various insurance plans. William testified that he and Blaire were currently residing in the 31-foot-long camper and that there was plenty of room for the children in the camper. He explained that they were able to save a lot of money by living in the camper and that they liked the "lifestyle" of living in the camper. On cross-examination, William testified about the period that he and Blaire had separated in May 2020, noting that he and Blaire had their disagreements and that they had resolved those disagreements.

¶ 31    At the close of the evidence and after hearing closing arguments of counsel, the circuit court denied Brian's motion to modify parenting time. The circuit court noted that Brian had received an offset of his entire child support arrearage in exchange for the parenting time agreement set out in the October 29, 2019, order. The circuit court noted that if Brian did not want to abide by the "burdens associated with the agreement, then he shouldn't get the benefit."

¶ 32    The circuit court further found that Brian and Blaire negotiated at arm's length when they agreed to the terms of the October 29, 2019, order. In addition, the circuit court emphasized that Brian had the burden to prove a substantial change of circumstances in order to modify the agreed parenting time. The circuit court found that, at that time the parties agreed on the allocation of parenting time, Brian knew that Blaire was in a relationship with William and that Blaire intended to move to Florida with the children to live with William after the 2019-20 school year. The circuit

10

court, therefore, found that Brian failed to carry his burden of establishing that Blaire's relocation to Florida constituted a substantial change in circumstances. The circuit court noted that the parties specifically agreed that the children would remain in Illinois only until the end of the 2019-20 school year and that, five days later, Blaire would become the "primary person and receive all the decision making" authority, including authority to choose where the children would go to school.

¶ 33 The circuit court held that the parties' voluntary deviation from the terms of the October 29, 2019, order due to the delay in William's transfer to Florida did not alter the parties' agreement or the terms of the October 29, 2019, order. The circuit court explained that, when the parties do not agree to deviating from the terms of the October 29, 2019, order, then the terms of the order control, and the terms of the agreed order allow Blaire to relocate the children to Florida. The circuit court did not find that Blaire's current living situation was a basis for modifying the parties' agreed parenting time, adding that the children might get to the RV park and "find out they absolutely love it." The circuit court, therefore, denied Brian's request to modify parenting time.

¶ 34 After pronouncing the judgment from the bench, the circuit court made a docket entry denying Brian's motion to modify parenting time. The circuit court noted in the docket entry that the parties' agreement as set out in the October 29, 2019, order was "controlling." The circuit court found that Blaire's move to Florida was not a change in circumstances that would allow a modification of the agreed allocation of parenting time. The circuit court wrote in the docket entry that Blaire would have possession of the children at the end of the children's winter break from school and that Blaire would be permitted to relocate the children to Florida as established in the agreed October 29, 2019, order. The circuit court also denied Blaire's petition for indirect civil contempt, declining to find Brian in willful contempt, based upon the particular circumstances of this case. Brian now appeals from the circuit court's judgment denying his motion to modify parenting time.

11

¶ 35                                    II. ANALYSIS

¶ 36     Before proceeding to an analysis of the issues raised on appeal, we note that pursuant to

Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), except for good cause shown, this court

is to issue a decision within 150 days after the filing of the notice of appeal. The notice of appeal

in this case was filed on January 15, 2021. Accordingly, Rule 311(a)(5) required the decision be

filed on or before June 15, 2021. However, this court notes that Brian filed three motions for

extension of time to file his appellant brief, Blaire filed one motion for extension of time to file

her appellee brief, and Brian filed one extension of time to file a reply brief, which was never filed

prior to the case being called on the docket. The court finds that the case on appeal was not ready

for disposition within the timeframe required by the supreme court rule and, therefore, good cause

exists to issue its decision after the 150-day requirement of Rule 311(a)(5).

¶ 37     Turning to the merits of Brian's appeal, the Illinois Marriage and Dissolution of Marriage

Act (Act) (750 ILCS 5/101 *et seq.* (West 2020)) governs the procedures for allocating parental

responsibilities for children. The Act defines "Parental responsibilities" as "both parenting time

and significant decision-making responsibilities with respect to a child." *Id.* § 600(d). Regardless

of whether the parents have ever been married, the statutory factors enumerated in the Act are

relevant in determining child custody. *Hall v. Hall*, 226 Ill. App. 3d 686, 689 (1991). Section

602.7(b) of the Act sets out the factors that the circuit court is required to consider when

determining the best interest of a child in conjunction with the allocation of parenting time. 750

ILCS 5/602.7(b) (West 2020).

¶ 38     Pursuant to section 610.5(a) of the Act, "[p]arenting time may be modified at any time,

without a showing of serious endangerment, *upon a showing of changed circumstances* that

necessitates modification to serve the best interests of the child." (Emphasis added.) *Id.* § 610.5(a).

Section 610.5(c) of the Act also provides that

                                          12

"the court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, *a substantial change has occurred in the circumstances of the child or of either parent* and that a modification is necessary to serve the child's best interests." (Emphasis added.) *Id.* § 610.5(c).

¶ 39 Therefore, pursuant to section 610.5(c) of the Act, the resolution of a motion requesting a modification of parenting time involves a two-step process. The circuit court must first determine whether the movant has established, by a preponderance of the evidence, that a substantial change in circumstances has occurred based on facts that have arisen since the entry of the existing parenting plan. *Id.* § 610.5(c); *In re Marriage of Burns*, 2019 IL App (2d) 180715, ¶ 26. Only if the movant has met that burden does the circuit court then move on to the question of whether a modification of the existing parenting plan would be in the children's best interests. *Burns*, 2019 IL App (2d) 180715, ¶ 26.

¶ 40 The legislature requires a showing of a substantial change in circumstances in order to promote stability and continuity with respect to the children's custodial and environmental relationships. See *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 409-10 (1994). Accordingly, the best-interest factors enumerated in section 602.7(b) of the Act come into play only when the circuit court considers the merits of the petition to modify; before the circuit court may consider the merits of the petition, it must first be satisfied that there has been a substantial change in circumstances to justify its consideration.

¶ 41 In January 2016, the Illinois General Assembly amended the Act to allow the modification of parenting time absent a showing of a substantial change in circumstances, but the legislature allowed this exception only in limited situations that do not apply in the present case. See Pub. Act

13

99-90, § 5-15 (eff. Jan. 1, 2016) (adding 750 ILCS 5/610.5(e)); see also *In re Marriage of O'Hare*, 2017 IL App (4th) 170091, ¶ 28 ("Excepting section 610.5(e), a party seeking a modification must still show a substantial change in circumstances to request a modification pursuant to section 610.5(c) of the Dissolution Act."). Accordingly, in the present case, the circuit court had no authority to modify the parties' allocation of parenting time absent a finding that there had been a substantial change in circumstances since the entry of the October 29, 2019, order.

¶ 42     Whether a substantial change in circumstances has occurred is a factual inquiry. Therefore, we review the circuit court's finding concerning whether there was a substantial change of circumstances under the manifest weight of the evidence standard. *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004); *In re Marriage of Wengielnik*, 2020 IL App (3d) 180533, ¶ 12 ("When the trial court finds that no substantial change in circumstances has occurred, we review whether the manifest weight of the evidence supports the finding.").

¶ 43     Under the manifest weight of the evidence standard, we view the evidence in the light most favorable to the appellee and, when faced with multiple reasonable inferences, will accept those inferences that support the circuit court's ruling. *Bates*, 212 Ill. 2d at 516. A determination of fact is against the manifest weight of the evidence only when an opposite conclusion is apparent, or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70.

¶ 44     In the present case, the parties entered into an agreement with respect to the allocation of parental responsibilities, and the parties' agreement included Blaire's ability to relocate to Florida with the children beginning five days after the end of the 2019-20 school year. By agreement, five days after the end of the 2019-20 school year, Blaire would become the designated residential parent, would have the sole authority to select the children's schools, and would have sole parental decision-making authority. At the hearing on Brian's motion to modify parenting time, both parties

14

agreed that when they reached their original agreement with respect to allocating parenting time, they both understood and agreed that Blaire would relocate to Florida with the children.

¶ 45    The relocation of the children to Florida, therefore, was part of the circumstances surrounding the entry of the agreed October 29, 2019, order and Blaire's ability to relocate to Florida was contemplated in the negotiated terms of the parties' agreement. In addition, Brian admitted that he entered into this agreement with Blaire in exchange for Blaire's forgiveness of Brian's child support arrearage. Although Brian acknowledged that the children's relocation to Florida was part of his agreement with Blaire, Brian nonetheless filed a motion to modify parenting time[2] in an attempt to allow the children to stay in his care in Illinois for the remainder of the 2020-21 school year. Brian testified that Blaire's move to Florida was the change in circumstances that, he claimed, supported his motion to modify parenting time.

¶ 46    While a parent's relocation can constitute a change in circumstances (see *In re Marriage of Adams*, 2017 IL App (3d) 170472, ¶ 19), under the facts of the present case, Blaire's relocation to Florida is simply not a change in circumstances that would allow a modification of the parties' parenting time. This is true because, under the facts of this case, Blaire's relocation of the children to Florida was understood and agreed to by Brian when the parties settled the terms of the October 29, 2019, order, and there is no factual dispute between the parties on this point. Blaire's relocation with the children was not something unexpected, unforeseen, nor a fact that arose after the entry

---

[2]We note parenthetically that Brian's motion did not seek any modification of the parties' agreement with respect to the allocation of parental decision-making authority. Pursuant to section 610.5(a) of the Act, Brian was procedurally barred from seeking a modification of parental decision-making authority until two years after the entry of the October 29, 2019, order unless Brian established by affidavits that the children's "present environment may endanger seriously [their] mental, moral, or physical health or significantly impair the [children's] emotional development." 750 ILCS 5/610.5(a) (West 2020). Brian made no attempt to make such a showing. Therefore, the modification of Blaire's sole parental decision-making authority as set forth in the agreed October 29, 2019, order is not at issue in this appeal. Instead, this appeal focuses only on Brian's request to modify parenting time.

of the October 29, 2019, order. Accordingly, Blaire's move to Florida was not a change in circumstances that could support a modification of the parties' parenting time.

¶ 47    "[C]ourts have an obligation to ensure that the custody judgment's original intent remains intact, as the Act favors finality and continuity of custody judgments." *In re Marriage of Wendy S.*, 2020 IL App (1st) 191661, ¶ 25. In the present case, although Blaire was unable to move to Florida as soon as she wanted to move, there is nothing in the record that establishes that this delay fundamentally changed the circumstances surrounding the parties' agreement with respect to relocating the children to Florida or otherwise affect the parties' agreement with respect to the allocation of Brian's parenting time after the children relocated to Florida. We agree with the circuit court's determination that the relocation delay was due to circumstances beyond Blaire's control and did not constitute a substantial change in the circumstances surrounding the parties' agreement with respect to parenting time. Accordingly, we cannot reverse the circuit court's finding that Brian failed to establish a substantial change in circumstances that would allow a modification of the parties' parenting time with the children as set out in the October 29, 2019, order.

¶ 48    Because Brian failed to meet his burden of showing a substantial change in circumstances, the circuit court was obligated to deny Brian's request to modify the parties' parenting time. *Burns*, 2019 IL App (2d) 180715, ¶ 27. Likewise, because we cannot reverse the circuit court's finding that Brian failed to prove a substantial change in circumstances, we are obligated to affirm the circuit court's judgment denying Brian's request to modify the parties' parenting time.

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the circuit court's judgment denying Brian's motion to modify parenting time.

¶ 51    Affirmed.